**PUERTO RICAN ORGANIZATION FOR POLITICAL ACTION, a not-for-profit Illinois corporation, et al., Plaintiffs,**

v.

**Stanley T. KUSPER et al., Defendants.**

No. 72 C 2312.

United States District Court,
N. D. Illinois, E. D.

Oct. 30, 1972.

Wallace Winter, Ray Rodriguez, Northwest Legal Services, Donald Bertucci, DePaul Law Clinic, Chicago, Ill., for plaintiffs.

William R. Ming, Jr., Aldus S. Mitchell, Jr., Sophia H. Hall, Andrew M. Raucci, Chicago, Ill., for defendants.

George C. Pontikes, Richard S. Kuhlman, Chicago, Ill., for amici curiae.

## MEMORANDUM OF DECISION

TONE, District Judge.

Plaintiffs bring this action to compel the defendant election commissioners to provide voting assistance in the Spanish language to United States citizens of Puerto Rican birth who are unable to use the English language. Plaintiffs rely upon the Voting Rights Act (42 U.S.C. § 1971 et seq.), the Civil Rights Act of 1871 (42 U.S.C. § 1983), and the Fourteenth and Fifteenth Amendments. Jurisdiction is based on 28 U.S.C. § 1343 and 42 U.S.C. § 1971(d). With their complaint, plaintiffs filed a motion for preliminary injunctive relief in con-

nection with the General Election to be held November 7, 1972.

The four individual plaintiffs allege that they were born and educated in Puerto Rico, are citizens of the United States by virtue of their birth, are residents of Illinois registered and entitled to vote, and are literate in Spanish but not proficient enough in English to exercise their right to vote effectively unless given assistance in Spanish. The corporate plaintiff is a not-for-profit organization, among whose objectives are to further the participation of Puerto Rican and other Spanish speaking Illinois residents in the political process. Plaintiffs allege they represent a class consisting of all other eligible voters of Puerto Rican birth in Chicago "who, like them, use and understand the Spanish language but are unable to read or understand English." The defendants are the three members of the Board of Election Commissioners of the City of Chicago. The Puerto Rican United Front and several other community organizations have appeared, with leave of Court, as amici curiae.

The defendants have filed a verified answer, challenging plaintiffs' claim on several grounds and denying, for lack of knowledge or information, that the individual plaintiffs or persons they seek to represent are unable to use the English language or unable to vote knowledgeably without the relief sought in the complaint.

For several weeks after the filing of the action, the Court and counsel for plaintiffs, defendants and amici curiae held a series of conferences to discuss what kinds of assistance to Spanish speaking voters could be provided in the time available before the November 7, 1972 General Election. Defendants' counsel have made it clear that their participation in these conferences does not constitute any concession on their part that the Court has jurisdiction or that the complaint has merit. During the period the conferences were going on, the defendants determined that it was practicable to take certain action to assist Spanish-speaking voters before November 7 and advised the Court and counsel for the plaintiffs and amici curiae that they intended to take this action regardless of whether plaintiffs persisted in their motion for preliminary injunction or withdrew the motion in view of defendants' announced intentions. Plaintiffs appear to be satisfied that the steps defendants have said they intend to take are all that they reasonably could be asked or ordered to do in the time available between the date the case was commenced and the November 7 election, but they have persisted in their motion for preliminary injunction because defendants refuse to enter into an agreement that they will do as they have said they intend to do. Accordingly, an evidentiary hearing was held on the motion for preliminary injunction.

The four individual plaintiffs are all citizens of the United States of voting age who were born in Puerto Rico, were educated in primary schools there in which the predominate language was Spanish, have moved to Chicago and are presently registered to vote here. It appears from their affidavits and from the testimony of two of them, given through an interpreter, that they cannot read, write or, except for a few words, understand English. Plaintiffs have submitted numerous affidavits of class members, each stating that the affiant is a United States citizen born in Puerto Rico, resides in Chicago, and is registered to vote but does not understand sufficient English to be able to vote effectively unless election instructions and assistance are provided in the Spanish language. Two members of the class testified through an interpreter. I am satisfied from the affidavits and testimony just described and from the testimony of other witnesses that plaintiffs and many thousands of other United States citizens of Puerto Rican birth residing in Chicago and registered to vote there will be unable to vote effectively in the November 7, 1972 General Election unless they are provided with instructions and assistance in the Spanish language.

■ The individual plaintiffs raise claims which are identical to the claims of the class and which are based on identical issues of law and fact. They allege that the defendants have acted on grounds generally applicable to the class and appropriately seek declaratory and injunctive relief with respect to the class as a whole. There is no reason to doubt that plaintiffs and their counsel will fairly and adequately protect the interests of the class. The cause is therefore confirmed as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

As to the corporate plaintiff, there is enough doubt about its standing to sue (compare Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) with NAACP v. Button, 371 U.S. 415, 428, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963)) to persuade me to defer ruling on this issue at this time. The action may be maintained by the individual plaintiffs and that is enough for now.

Puerto Rico is bilingual, but the primary language of its people and the predominate language in the classrooms of its schools is Spanish. While typically instruction in English as a second language is given beginning with the fourth grade, and in some instances the first grade, in Puerto Rican schools, this instruction usually does not prepare pupils to communicate effectively in English. Therefore, many persons born and educated in Puerto Rico are unable to speak, understand or read English.

Immigrants to the United States from non-English speaking foreign countries are required to learn English as a condition to becoming United States citizens. 8 U.S.C. § 1423. Persons born in Puerto Rico after April 10, 1899 are, *ipso jure,* citizens of the United States. 8 U.S.C. §§ 1101(a)(38), 1401(a), 1402. Being citizens from birth, they are not required to learn English.

■ Section 4(e) of the Voting Rights Act of 1965 (42 U.S.C. § 1973b(e)), read with the Voting Rights Amendments of 1970 (42 U.S.C. § 1973aa), establishes and protects the voting rights of persons educated in Puerto Rican schools[1] by prohibiting the states "from conditioning the right to vote of such persons on ability to read, write, understand, or interpret any matter in the English language" (42 U.S.C. § 1973b(e)(1)).[2] Designed originally to aid the Puerto Rican population of New York (Katzenbach v. Morgan, 384 U.S. 641, 645, 86 S.Ct. 1717, 16 L.Ed.2d 828, n. 3 (1966)) without disturbing the minimum education requirements of that state's election law, Section 4(e) specifically enfranchised those who had successfully completed the sixth grade in an Ameri-

---

1. The only persons who met Section 4(e)'s description of "persons educated in American-flag schools in which the predominant classroom language was other than English" were persons educated in Puerto Rican schools. Katzenbach v. Morgan, 384 U.S. 641, 645, 86 S.Ct. 1717, 1719, 16 L.Ed.2d 828, n. 3 (1966).

2. Section 4(e) reads as follows:
"(1) Congress hereby declares that to secure the rights under the fourteenth amendment of persons educated in American-flag schools in which the predominant classroom language was other than English, it is necessary to prohibit the States from conditioning the right to vote of such persons on ability to read, write, understand, or interpret any matter in the English language.
"(2) No person who demonstrates that he has successfully completed the sixth primary grade in a public school in, or a private school accredited by, any State or territory, the District of Columbia, or the Commonwealth of Puerto Rico in which the predominant classroom language was other than English, shall be denied the right to vote in any Federal, State, or local election because of his inability to read, write, understand, or interpret any matter in the English language, except that in States in which State law provides that a different level of education is presumptive of literacy, he shall demonstrate that he has successfully completed an equivalent level of education in a public school in, or a private school accredited by, any State or territory, the District of Columbia, or the Commonwealth of Puerto Rico in which the predominant classroom language was other than English."

can-flag school in which the predominant classroom language was other than English. (42 U.S.C. § 1973b(e)(2).) Congress' intent to place the voting rights of Puerto Rican educated citizens on a parity with those of English speaking citizens was evidenced by an "except" clause which governed when the applicable state election law contained a lower education requirement than completion of the sixth grade.[3] (*Ibid.*)

When Congress abolished all state minimum education and literacy requirements for a period of five years in the Voting Rights Amendments of 1970 (42 U.S.C. § 1973aa(a) and (b)), what was left of Section 4(e) was its prohibition against denying any person educated in Puerto Rico, whatever the extent of his education, "the right to vote in any Federal, State, or local election because of . . . inability to read, write, understand, or interpret any matter in the English language." That prohibition protects the voting rights of the plaintiff class in this case.

■ The right to vote means the right to effectively register the voter's political choice, not merely the right to move levers on a voting machine or to mark a ballot. In deciding that a state could not, consistent with the Equal Protection Clause, provide for voting assistance to physically infirm voters while denying it to illiterate voters, the three-judge court in Garza v. Smith, 320 F.Supp. 131, 136 (W.D.Tex.1970), said:

"If the 'right to vote' consists only of the right to enter the voting booth without hindrance or discrimination, perform the physical act of voting, and have the vote so recorded counted in the total of like votes cast, we cannot say that the challenged provisions have an impact on the illiterate voter's ability to exercise the right. Except for physically disabled or blind illiterates, as to whom the issue is moot, an illiterate voter is capable of performing each element of the 'right

to vote', as defined above, without hindrance from the statutes in question. We decide, however, that the 'right to vote' additionally includes the right to be informed as to which mark on the ballot, or lever on the voting machine, will effectuate the voter's political choice."

The Court relied upon the earlier holding of another three-judge court, United States v. Louisiana, 265 F.Supp. 703, 708 (E.D.La.1966), affd., 386 U.S. 270, 87 S.Ct. 1023, 18 L.Ed.2d 39 (1970), which declared invalid a provision of the Louisiana segregation statutes of 1960 withdrawing voting assistance from illiterate voters. Referring to a different provision of the Voting Rights Act than the one involved here, the Court said:

"The Act provides for the suspension of literacy tests in states which have used such tests as a discriminatory device to prevent Negroes from registering to vote. Like any other law, this provision implicitly carries with it all means necessary and proper to carry out effectively the purposes of the law. As Louisiana recognized for 150 years, if an illiterate is entitled to vote, he is entitled to assistance at the polls that will make his vote meaningful. We cannot impute to Congress the self-defeating notion that an illiterate has the right [to] pull the lever of a voting machine, but not the right to know for whom he pulls the lever."

■ Section 4(e) requires that persons in the plaintiff class, notwithstanding their "inability to read, write, understand, or interpret" English, be permitted to vote, *i. e.*, to effectively register their political choice. If voting instructions and ballots or ballot labels on voting machines are printed only in English, the ability of the citizen who understands only Spanish to vote effectively is seriously impaired. It follows that the members of the plaintiff class are entitled to such assistance as may be required to enable them to vote effectively.

3. Illinois had no literacy requirement; nor did it require knowledge of English in order to vote. Ill.Rev.Stats., 1971, Ch. 46, §§ 3—1, 17—14, 24—9.

The standards for determining whether a preliminary injunction should be issued are well known and need not be restated here. I am satisfied from the evidence that the right to vote effectively which is guaranteed to the plaintiff class by federal law will be seriously impaired if instructions and assistance in the Spanish language are not made available prior to and in conjunction with the November 7 General Election. All of the conditions necessary for the issuance of a preliminary injunction are present unless the announced intention of defendants to provide voluntarily the assistance needed by the plaintiff class obviates the need for an injunction.

The defendants have announced that they have printed Spanish versions of certain election materials and intend to distribute copies of these materials to the polling places in which plaintiffs contend they are needed. In addition, defendants have stated that they intend to appoint election judges who speak both Spanish and English and assign them to the precincts in which plaintiffs contend they are needed, to the extent that qualified applicants become available and openings exist. In view of the fact that the complaint was filed so recently, it is conceded by plaintiffs that it is not practicable for defendants to do more prior to the November 7 General Election.

The problem is that defendants, while stating that they intend to take the foregoing action, insist that they are not obligated under the law to do so and pointedly refuse to agree to do so. They state that the action they intend to take will be merely an experiment which they are conducting voluntarily and not by reason of any rights of members of the plaintiff class. Accordingly, absent an injunction, they would be free to decide at any time before or during the election not to carry out all or any part of the contemplated program. No sanctions could be imposed, for they have given the Court and plaintiffs fair warning that their position is that they are not required, and they are not promising, to do anything, and that whatever they do will be entirely voluntary.

It is also significant that defendants took no steps to provide election assistance in Spanish prior to the commencement of this action. The defendants' announcement of an intention originating after the commencement of the suit to do what the requested preliminary injunction would require is not a ground for denial of the injunction. Consumers Union of U. S., Inc. v. Theodore Hamm Brewing Co., 314 F.Supp. 697, 701 (D. Conn.1970); Consumers Union of U. S., Inc. v. Admiral Corp., 186 F.Supp. 800, 801 (S.D.N.Y.1960); Local Trademarks, Inc. v. Grantham, 166 F.Supp. 494, 508 D.Neb.1957).

It should also be observed, however, that the defendants have worked with good will and considerable energy in arranging for the printing of materials in Spanish and planning the distribution of those materials notwithstanding their denial that plaintiffs have a right to relief and notwithstanding their refusal to enter into an agreement to provide assistance. This ambivalence on the part of defendants makes the decision to issue a preliminary injunction more difficult than it would otherwise be. The enforcement of the important rights of the plaintiff class should not depend, however, upon the voluntary acts of the defendants or upon my prediction that defendants will do what they say they intend, but will not agree, to do.

A preliminary injunction will be issued requiring defendants to cause to be prepared and distributed the following materials in the Spanish language to the polling places at which the evidence shows those materials are needed, before the November 7, 1972 General Election: "Directions for Voting on Voting Machines" to be affixed to Specimen General Elections Ballots, posters advising who is entitled to assistance, and instruction cards to be affixed to the model voting machines. The injunction will also require defendants to cause the local election officials to use and display these ma-

terials in the Spanish language in those polling places. Defendants will also be ordered to make all reasonable efforts to appoint, as judges of election in those polling places, qualified applicants who are bilingual in Spanish and English, where a vacancy exists and there is not already a bilingual judge of the party for which the vacancy exists. The detailed terms of the injunction will be stated in the injunction order.