**Peggy ARROYO and Petra Gonzales et al.**

v.

**Dolores TUCKER, et al.**

**Civ. A. No. 73–2247.**

United States District Court,
E. D. Pennsylvania.

March 25, 1974.

Cesar A. Perales, Herbert Teitelbaum, Puerto Rican Legal Defense & Education Fund, Inc., New York City, Nelson A. Diaz, William Traylor, Temple University Legal Aid Office, Philadelphia, Pa., for plaintiffs.

Michael Minkin, Deputy Atty. Gen., Commonwealth of Pa., Philadelphia, Pa., for Tucker.

John M. McNally, Jr., First Deputy City Sol., Philadelphia, Pa., for Patterson, Maier and Menna.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Plaintiffs bring this action to compel the defendants Philadelphia County Commissioners and Secretary of the Commonwealth of Pennsylvania to implement a bilingual English-Spanish electoral process in order to provide assistance to persons of Puerto Rican birth or extraction who speak, read, write and comprehend English with severe difficulty or not at all. Plaintiffs' claims rest on the Voting Rights Act (42 U.S.C. § 1971 et seq.), the Civil Rights Act of 1871 (42 U.S.C. § 1983), and the First and Fourteenth Amendments. We have jurisdiction pursuant to 28 U.S.C. § 1343(3) and (4) and 42 U.S.C. § 1971(d). Simultaneously with filing their complaint, plaintiffs filed a motion for preliminary injunction with respect to the November 6, 1973 general elections. In addition, on October 5, an application for a temporary restraining order was granted forbidding defendants from distributing any election materials except in bilingual form.

After lengthy discussions among the parties and the court concerning the November 6 elections, an order was entered requiring defendants to, *inter alia*, prepare all written election materials in both English and Spanish and to provide bilingual personnel at all polling places falling within a 1970 census tract containing 5 percent or more persons of Puerto Rican birth or parentage. This relief is substantially identical to the preliminary injunction ordered by Judge Stewart in Torres, et al. v. Sachs, et al., 73 Civ. 3921 (S.D.N.Y. Sept. 26, 1973), a case raising the same claims as the instant lawsuit. Plaintiffs now move under Rule 56 of the Federal Rules of Civil Procedure for summary judgment.

Defendants have not filed an answer nor have they submitted opposing papers regarding plaintiffs' motion for preliminary injunction or the present motion. Nevertheless, the salient facts are not in dispute. The plaintiffs are United

States citizens born in Puerto Rico. They reside in the City of Philadelphia. They are eligible to vote, but neither read, write, speak nor comprehend English, the sole language in which Philadelphia conducts its election process. It appears from plaintiffs' affidavits that they are unable to participate in the electoral process unless they receive assistance in Spanish.

Plaintiffs bring this action individually and in behalf of a class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. The parties do not dispute that there are a sufficient number of Puerto Rican persons residing in Philadelphia who speak, read, write and comprehend only Spanish, and who are eligible to vote, in order to constitute a class of plaintiffs. The individual plaintiffs raise claims which are identical to the claims of the class and which are based on identical issues of law and fact. The defendants have acted on grounds generally applicable to the class and plaintiffs appropriately seek declaratory and injunctive relief with respect to the class as a whole. There is no reason to doubt that plaintiffs and their counsel will fairly and adequately protect the interests of the class. The cause is therefore determined as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## CONCLUSIONS OF LAW

Section 4(e) of the Voting Rights Act of 1965 (42 U.S.C. § 1973b(e) forbids any State from "conditioning the right to vote" of a person educated for a period of six years in an American-flag school where English was not the language of instruction on his or her degree of fluency in the English language.[1] The legislative purpose behind section 4(e) makes clear that the Puerto Rican community residing in the United States is the group sought to be protected by the terms of the Act. Katzenbach v. Morgan, 384 U.S. 641, 645 n. 3, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966). Since 1917, residents of Puerto Rico were citizens of the United States *ipso jure*, 8 U.S.C. § 1402. Thus, unlike naturalized citizens, Puerto Ricans need not demonstrate a facility with English. Indeed since 1947, the United States has encouraged Puerto Rico to teach its school children in Spanish.[2] See Puerto Rican Organization For Political Action ("PROPA") v. Kusper, 490 F.2d 575 (C.A.7, 1973). As a result, many immigrants from Puerto Rico, all of whom are United States citizens, arrive here without speaking or reading English.

1. "(1) Congress hereby declares that to secure the rights under the Fourteenth Amendment of persons educated in American-flag schools in which the predominant classroom language was other than English, it is necessary to prohibit the States from conditioning the right to vote of such persons on ability to read, write, understand, or interpret any matter in the English language.

"(2) No person who demonstrates that he has successfully completed the sixth primary grade in a public school in, or a private school accredited by, any State or territory, the District of Columbia, or the Commonwealth of Puerto Rico in which the predominant classroom language was other than English, shall be denied the right to vote in any Federal, State, or local election because of his inability to read, write, understand or interpret any matter in the English language, except that in States in which State law provides that a different level of education is presumptive of literacy, he shall demonstrate that he has successfully completed an equivalent level of education in a public school in, or a private school accredited by, any State or Territory, the District of Columbia, or the Commonwealth of Puerto Rico in which the predominant classroom language was other than English."

2. The late Senator Robert F. Kennedy, a co-sponsor of Section 4(e), pointed out during the floor debates: "In School [the typical educated Puerto Rican] reads, in Spanish, the same textbooks which his fellow citizen on the mainland reads in English. That his schooling takes place in Spanish is not up to him, but is due to the fact that the U.S. Government has chosen to encourage the cultural autonomy of the Commonwealth of Puerto Rico, to make Puerto Rico a showcase for all of Latin America." 111 Cong.Rec. 10675.

Section 4(e) was enacted to protect their right to vote without regard to the language they speak.

In 1970, Congress amended the Voting Rights Act to prohibit all states from using any literacy tests for a period of five years. 42 U.S.C. § 1973a(a). The 1970 provision was upheld in Oregon v. Mitchell, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970). As a result of the 1970 amendment, the sixth grade education requirement in Section 4(e) was eliminated. Propa v. Kusper, *supra*.

The controlling issue presented here is whether Philadelphia's English-only election system constitutes a condition on the plaintiffs' right to vote as prescribed in Section 4(e). Although the issue is novel for us, identical issues were presented to a district court in New York in Torres v. Sachs, supra, and to the Seventh Circuit Court of Appeals in Propa v. Kusper, supra. In *Torres*, Judge Stewart determined that "The conduct of an election in English only violates plaintiffs' rights under the Voting Rights Amendments of 1970 which enforce the Fourteenth Amendment to the Constitution of the United States and the Civil Rights Act of 1871."

In *Propa*, supra, the court held that the Voting Rights Act mandated that "a Spanish-speaking Puerto Rican is entitled to assistance in the language he can read or understand."

■ The "right to vote" as contained in the Voting Rights Act has been interpreted broadly. It is not merely the right to gain physical access to a voting booth. In Garza v. Smith, 320 F.Supp. 131 (W.D.Tex.1970), vacated and remanded for appeal to the Fifth Circuit, 401 U.S. 1006, 91 S.Ct. 1257, 28 L.Ed.2d 542, appeal dismissed for lack of jurisdiction, 450 F.2d 790 (C.A.5, 1971) the court held that the right to vote included the "right to be informed" and found a Texas statute violated the equal protec-

tion clause by permitting assistance to blind voters but not to illiterate voters. A narrow construction of the "right to vote" was similarly rejected in United States v. Louisiana, 265 F.Supp. 703 (E.D.La.1966), aff'd without opinion, 386 U.S. 270, 87 S.Ct. 1023, 18 L.Ed.2d 39 (1967); United States v. Mississippi, 256 F.Supp. 344 (S.D.Miss.1966); and United States v. Post, 297 F.Supp. 46 (W.D.La.1969). In relying on this line of cases, the court in *Propa* concluded that the "right to vote" encompasses the right to an "effective vote."

■ We agree that the "right to vote" means more than the mechanics of marking a ballot or pulling a lever. Here, plaintiffs cannot cast an "informed" or "effective" vote without demonstrating an ability to comprehend the registration and election forms and the ballot itself.[3] The English-only election materials therefore constitute a device "conditioning the right to vote" of plaintiffs on their ability to "read, write, understand, or interpret any matter in the English language." Such an election process cannot withstand scrutiny under the Voting Rights Act. Accordingly, plaintiffs' motion for summary judgment is granted, and an appropriate Order will be entered.

### ORDER

Whereas, the Plaintiffs have moved this court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and based upon the motion, the affidavits in support thereof and the opinion of this court filed herewith.

It is hereby ordered adjudged and decreed that the motion is granted and judgment shall be entered as follows:

1. Pursuant to 28 U.S.C. Sections 2201 and 2202, defendants' practices and procedures of conducting elections in English only are declared in violation of

---

3. In another context, the Supreme Court of the United States recently determined that providing English books, English-speaking teachers, and an exclusively English curriculum to non-English speaking students "effectively foreclosed [them] from any meaningful education." Lau v. Nichols, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974).

plaintiffs' rights under the Voting Rights Act of 1965, 42 U.S.C. Section 1973 et seq. and the Voting Rights Amendments of 1970, 42 U.S.C. Section 1973aa et seq. which enforce the Fourteenth Amendment of the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

2. Defendants, their agents, employees, representatives and all those acting in concert with them are permanently enjoined from conducting elections and registration in English only and are required to (i) provide all written materials which are directly connected with the registration of and election by voters in both Spanish and English, including, but not limited to, sample ballots, voter's certificates, registration certificate and all instructions to voters; (ii) provide an unofficial Spanish translation of all propositions, questions, and amendments which will be affixed to the right inside of each voting booth; (iii) provide ballot labels which list office titles in both Spanish and English insofar as such bilingual listing is consistent with mechanical possibility and readability, provided that if the above criteria prevent such bilingual listing then sample ballots of a reduced size in Spanish will be provided to the voters for use in the polling booths; (iv) provide a sufficient number of individuals who speak, read, write, and understand both Spanish and English at Philadelphia City Hall where registration and voting occurs, and at all polling places and places of registration in the City of Philadelphia falling in whole or in part, in a census tract containing 5 percent or more persons of Puerto Rican birth or extraction pursuant to the most recent census report reflecting such information; (v) provide appropriate and conspicuous signs at all polling places and places of registration described in subparagraph 2(iv) indicating, in Spanish, that individuals are available to assist Spanish-speaking voters or registrants, and that bilingual written materials are available; (vi) publicize elections in all media proportionately in a way that reflects the language characteristics of plaintiffs, and (vii) communicate the contents of the Court's order to all agents, employees and representatives of the defendants involved in the registration and voting process.