Rosa TORRES et al., Plaintiffs,

v.

Alice SACHS et al., Defendants.

Juana LOPEZ et al., Plaintiffs,

v.

David DINKINS et al., Defendants.

Nos. 73 Civ. 3928,
73 Civ. 695.

United States District Court,
S. D. New York.

Nov. 6, 1975.

Supplemental Memorandum
Nov. 25, 1975.

See also, D.C., 381 F.Supp. 309.

**344**

Puerto Rican Legal Defense & Education Fund, Inc. by Oscar Garcia-Rivera, Herbert Teitelbaum, Kenneth Kimerling, M. D. Taracido, New York City, for plaintiffs.

W. Bernard Richland, Corp. Counsel, William P. DeWitt, Asst. Corp. Counsel, New York City, for defendants.

### MEMORANDUM

STEWART, District Judge:

This court declared that counsel for plaintiffs were entitled to attorneys' fees in two related cases, *Torres v. Sachs*, 73 Civ. 3921 (S.D.N.Y. Jan. 16, 1975) ("Torres") and *Lopez v. Dinkins*, 73 Civ. 695 (S.D.N.Y. March 27, 1975) ("Lopez"). Pending determination of the amount to be awarded, the Supreme Court rendered its decision in *Wilderness Society v. Alyeska Pipeline Service Co.*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) ("Alyeska Pipeline"). In August of 1975, Congress amended § 14 of the Voting Rights Act of 1965 to permit a court, at its discretion, to award reasonable attorneys' fees to a party prevailing in an action to enforce the voting guarantees of the fourteenth and fifteenth amendments.[1] The question before us is the effect, if any, of Alyeska Pipeline and the Congressional amendment upon our previous award of fees.

In *Alyeska Pipeline*, the Supreme Court held that Congress, and not the

Judiciary, should determine when attorneys' fees should be allowed to a prevailing party in a litigation. Absent Congressional direction, the "American Rule," which ordinarily precludes the prevailing litigant from collection of attorneys' fees, is to be applied, except in situations of bad faith, willful disobedience of a court order, and other exceptional circumstances in which the inherent equitable powers of courts may appropriately be asserted. The Court further disapproved the approach of many lower federal courts which awarded attorneys' fees under the theory that private litigants were acting on behalf of the public interest. Fn. 46, 421 U.S. at 270, 95 S.Ct. 1612. As much of our earlier conclusion was premised upon this "private attorneys general" theory, *Alyeska Pipeline* might have made it necessary to revise our decision. However, the intervening legislative direction brings our grant of attorneys' fees well within the mandate of *Alyeska Pipeline* that courts should generally grant attorneys' fees only under Congressional direction.

As both parties agree that the cases of *Torres* and *Lopez* are still pending before us, the initial issue to be decided is whether the August 6th amendment to the Voting Rights Act may be applied retroactively to these litigations. The appropriate test for the retroactive application of amendments which permit attorneys' fees to be awarded when litigation of the merits has been terminated but the case is still pending was articulated by the Supreme Court in *Bradley v. School Board of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). Once it is determined that the new statute has application to the case, as it does, *Bradley* directs that the court must "apply the law in effect at the time it renders its decision, unless doing so would result in manifest in-

---

1. The full text of the amendment provides: "In any action or proceeding to enforce the voting guarantees of the fourteenth and fifteenth amendments, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

justice or there is statutory direction or legislative history to the contrary." 416 U.S. at 711, 94 S.Ct. at 2016. Looking to the respective abilities of the parties to protect their interests and to the importance of the rights enforced, we can perceive no "manifest injustice" to defendants in granting plaintiffs' motion.

Defendants attempt to impress upon us that the *Torres* and *Lopez* decisions created new substantive rights for plaintiffs and that defendants were burdened by new obligations. Defendants rely upon the 1975 amendments to the Voting Rights Act to illustrate that bilingual ballot assistance has not previously been required. Thus, defendants maintain that retroactive application of the amendments would be unjust

■ Defendants misconceive the pertinence of the 1975 amendments to the motion before the court. At issue here is the applicability of § 14(e) to this litigation; the enactment of substantive provisions in the Act does not affect the present motion. Further, as the legislative history indicates, the substantive revisions were not viewed as a "radical step" [Cong. and Admin.News, Aug. 25, 1975, p. 1483] but were "merely an extension of the legislative and constitutional principles approved by the Supreme Court in *South Carolina v. Katzenbach*, [383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966)] and *Katzenbach v. Morgan*, [384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966)]." Cong.News at 1487. In the Congress' view, no novel constitutional issues were presented. This interpretation accords with our earlier decisions in these cases, which were based upon Section 4(e) of the Voting Rights Act of 1965, the 1970

amendments, and the Constitution. Our holding that a right to vote includes a right to an effective vote had previously been shared by courts which had looked at voting rights in analogous contexts. See *e. g., Puerto Rican Organization for Political Action v. Kusper,* 350 F.Supp. 606 (N.D.Ind.1972), *aff'd* 490 F.2d 575 (7th Cir. 1973), *United States v. Louisiana,* 265 F.Supp. 703 (E. D.La.1966), *aff'd without opinion,* 386 U. S. 270, 87 S.Ct. 1023, 18 L.Ed.2d 39 (1967), and *United States v. Post,* 297 F. Supp. 46 (W.D.La.1969). Defendants' position that our decisions created new substantive rights cannot be maintained.[2]

■ Finally, defendants suggest that their cooperation with plaintiffs in implementing the decisions of this court should persuade us to disallow attorneys' fees for plaintiffs. Such argument has little merit; as Judge Frankel noted in *Aspira v. Board of Education of the City of New York,* 65 F.R.D. 541, 543 (S.D. N.Y.1975), [in which a consent decree preceded the request for attorneys' fees], a case need not be fought to the "last ditch" to permit attorneys' fees to be granted. Instead, while courts may look to the resistance by the defendants as one factor,[3] attention should be focused upon the obstacles which plaintiffs encountered and the contribution plaintiffs made. Here, plaintiffs' actions were necessary to bring about compliance with constitutional requirements. See, *e. g., Armstead v. Starkville Municipal Separate School District, et al.,* 395 F.Supp. 304 (N.D.Miss.1975). Plaintiffs' significant contribution in this area is demonstrated by the reliance placed upon the litigations by other courts and Congress. See, *e. g., Arroyo*

---

2. See also *Brown v. General Services Administration,* 507 F.2d 1300 (2d. Cir. 1974), *cert. granted,* 421 U.S. 987, 95 S.Ct. 1989, 44 L.Ed.2d 476 (1975).

3. The resistance interposed by the defendants is, in our view, most relevant when considering the amount of fees to be awarded. The difficulty of the litigation must be considered in assessing both the amount of time reasonably expended and the risks of undertaking the litigation. See, *e. g., City of Detroit v. Grinnell Corporation,* 495 F.2d 448 (2d Cir. 1974).

*v. Tucker,* 372 F.Supp. 764 (E.D.Pa. 1974) and the Congress and Admin. News, (Aug. 25, 1975).

Plaintiffs' motion for attorneys' fees is granted. As the parties, by affidavit, have already indicated that there is a dispute as to the amount to be awarded, a hearing must be held. See *City of Detroit v. Grinnell Corp., supra.*

So ordered.

## SUPPLEMENTAL MEMORANDUM

This court granted attorneys' fees to plaintiffs' counsel for the litigation *Lopez v. Dinkins* ["Lopez"], 73 Civ. 2666 and of *Torres v. Sachs* ["Torres"], 73 Civ. 3921. See memorandum decision filed November 6, 1975. In order to determine the amount of fees to be awarded, we ordered that an evidentiary hearing be held. *City of Detroit v. Grinnell Corporation* ("Grinnell"), 495 F.2d 448 (2d Cir. 1974) and Rule 11B of the Local Rules of the Southern District of New York. Our purpose was to establish what fee award would "compensate the attorney[s] for the reasonable value of the services benefiting the . . . claimant." (citation omitted), *Grinnell, supra* at 470.

A hearing was held on November 17th and 18th, 1975. During the course of the hearing, evidence was produced as to the qualifications of plaintiffs' attorneys, the difficulties of the litigation, the risk of undertaking the litigation, and the benefits derived from the litigation. On the basis of that evidence, in addition to the affidavits submitted by the parties, we have reached the following conclusions.

Plaintiffs' attorneys, Herbert Teitelbaum, Kenneth Kimerling, and Jose A. Rivera, litigated the cases with skill, demonstrating their expertise in the area. Teitelbaum, a 1968 graduate of New York University Law School, has had experience as an associate of private law firms both in Boston and New York before he became affiliated with the Puerto Rican Legal Defense Fund, Inc. ("PRLDF"). He is presently the Legal Director of the PRLDF. The court has been impressed with the consistently high quality of both his written submissions and his oral presentations. Our opinion is echoed in the affidavit of Michael W. Mitchell, a partner at Skadden, Arps, Slate, Meagher & Flom, who supervised Teitelbaum during the time of Teitelbaum's association with that firm. Mitchell reports that Teitelbaum's "professional competence is of the highest caliber." (Mitchell affidavit, ¶ 4).

Teitelbaum testified at the hearing that he had had experience with civil rights litigation and had brought other cases under the Voting Rights Act. While the issues were not identical to those in *Lopez* and *Torres*, Teitelbaum's familiarity with the substantive area, as well as with the procedural problems of federal litigation, was clearly beneficial to plaintiffs here.

■ On the basis of his demonstrated skill and competence in dealing with complex questions, his expertise in the area, and after inquiry into "the hourly amount to which attorneys of like skill in the area would typically be entitled . . ."[1] (*Grinnell, supra,* 495 F.2d at 471) we have determined that Teitelbaum should be awarded an hourly rate of $75.00 per hour.

Kenneth Kimerling graduated from Columbia University Law School with honors in 1969. Between 1969 and 1972, he had litigation experience in the civil rights litigation, first as a Vista volunteer and later as an attorney for the Attica Defense Committee. He joined the PRLDF in 1972 as a staff attorney and participated in many litigations, including voting right cases other than

1. Jonathan Lubell, a partner in a New York law firm which has conducted much litigation, including civil rights cases, stated that work of individuals at his firm who have six years experience is billed at an hourly rate of $75–85 dollars per hour.

*Lopez* and *Torres*. Jose A. Rivera, the third attorney who worked on these cases, graduated from New York University Law School in 1971, was a staff attorney with the Mobilization for Youth Legal Services Corporation, and joined the PRLDF in 1972. In 1974, Rivera became an assistant professor of law at Rutgers University. It is our opinion that the work of both Kimerling and Rivera should be compensated at an hourly rate of $50.00 per hour, because we believe such a rate accurately reflects their competence and experience. We note again that the high quality of the materials submitted to the court by plaintiffs' counsel.

As defendants do not dispute the validity of plaintiffs' records as to the *amount* of time expended, but rather raise questions as to the *necessity* for such time expenditures, we now turn to the other factors which we must consider before determining the amount to be awarded. We are of the opinion that the risk of litigation in *Lopez*, one of the first cases brought under § 4(e) of the Voting Rights Act to require that bilingual ballots be provided for a school board election, was great. The issue litigated was, as the parties have stipulated, "novel"; only one other lawsuit, *Puerto Rican Organization for Political Action v. Kusper*, 350 F.Supp. 606 (N. D.Ill.1972), *aff'd* 490 F.2d 575 (7th Cir. 1973), had dealt with the question.

The risk involved in bringing the second lawsuit, *Torres*, which involved the same legal principle but sought its application to a wider range of ballots, was lessened by plaintiffs' achievements in *Lopez*. In fact, the necessity of bringing *Torres* is disputed by the parties. Plaintiffs contend that they attempted to negotiate with New York City's Board of Elections and that the filing of *Torres* is evidence of defendants' failure to cooperate. Defendants argue that the plaintiffs should have litigated both questions in one lawsuit and that the hours spent on the *Torres'*

complaint should not be included in the fee award because the time was needlessly spent. We are not convinced, by the hindsight upon which defendants rely, that plaintiff should have known, when filing the first suit, that they would be victorious and thus should have asked for widespread relief. Further, we agree with plaintiffs' counsel that procedural questions, such as the ripeness of the issues of *Torres*, might well have precluded litigation of the two suits together. Thus, in making our computations, we are not willing to subtract the amount of hours spent by plaintiffs' attorneys on *Torres*. We also conclude that, while we could increase the hourly rate or add a "bonus" because the risk of bringing *Lopez* was great, we would also decrease such an amount because the risk of bringing *Torres* was considerably lessened by the existence of the *Lopez* decision. Rather than go through a pro forma mechanistic ritual, we prefer to leave the hourly rate for both cases at the figures which we have already determined to be appropriate.

■ We believe that the award is proper in light of the benefit to the public conferred by plaintiffs' counsel. We note that *Lopez* and *Torres* were discussed with approval in the legislative history to the recent amendments of the Voting Rights Act [See Cong. and Admin. News, Aug. 25, 1975, pp. 1483–1484] and have been cited as precedent by other courts confronted with similar issues. See, *e. g. Arroyo v. Tucker*, 372 F.Supp. 764 (E.D.Pa.1974). Finally, we do not believe that there is any question but that public interest litigants are entitled to receive fees. See, Cong. and Admin.News, Aug. 25, 1975 at p. 1492, and cases cited therein; see also *Aspira of N.Y., Inc. v. Bd. of Ed. of City of N.Y.*, 65 F.R.D. 541 (S.D.N.Y.1975), and *Thompson v. Madison County Board of Education*, 496 F.2d 682 (5th Cir. 1974).

■ According to the affidavits submitted to us, the validity of which is uncontested by defendants, Teitelbaum

spent 97 hours in preparation of *Lopez* [Exhibit C, attached to Teitelbaum Affidavit of March 27, 1975] and 68.12 hours on *Torres* [Exhibit D]. In addition, he spent 2.9 hours on correspondence directly related to the litigations [Exhibit E of the March 27th affidavit] and 85.15 hours in preparation of materials on the question of the availability of attorneys' fees.[2] [Teitelbaum Affidavit of Nov. 14, 1975]. Thus, the total number of hours expended by Teitelbaum is 253.17; at an hourly rate of $75.00 per hour, he is entitled to $18,-987.75.

Kimerling spent 52 hours on *Lopez*. Rivera spent 31.50 hours on *Torres*. Both are compensated at an hourly rate of $50.00 per hour. Together, the fee awarded for their hours is $4,175.00. Xeroxing costs were $89.25. Thus, the total sum to be paid by defendants to the Puerto Rican Legal Defense Fund is $23,252.00.

So ordered.

---

2. Time spent in preparation and litigation of the question of the availability of attorneys' fees may be compensated. *Hairston v. R.R.*
*Apt.*, 510 F.2d 1090 (7th Cir. 1975), *Cole v. Hall*, 376 F.Supp. 460 (E.D.N.Y.1974).