(Nos. 53021, 53028 cons.—

ANDOMARO HERNANDEZ, Appellee, v. THE DEPART-
MENT OF LABOR *et al.,* Appellants.

*Opinion filed January 20, 1981.*

SIMON, J., took no part.

Tyrone C. Fahner and William J. Scott, Attorneys General, of Springfield (Myra Turner, Assistant Attorney General, of Chicago, of counsel), for appellant Department of Labor.

Paul Jordan Cherner and Janet E. Goldberg, of Friedman & Koven, of Chicago, for appellant Lab-Line Instruments, Inc.

Alan A. Alop, Jane Alshuler, Debra L. Raskin and John Bouman, of Chicago, for appellee.

Katz, Friedman, Schur & Eagle, of Chicago, for *amicus curiae* United Automobile, Aerospace and Agricultural Implement Workers of America.

MR. JUSTICE CLARK delivered the opinion of the court:

This unemployment compensation case (Ill. Rev. Stat. 1977, ch. 48, par. 300 *et seq.*) resulted from a lawsuit filed pursuant to the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*). The dispute arose from a claim for benefits filed personally by the plaintiff, Andomaro Hernandez, with the assistance of an agency interpreter, on September 21, 1977. The claims adjudicator found plaintiff ineligible for benefits due to alleged work-related misconduct consisting of three consecutive unauthorized absences, and sent a letter written entirely in English to this effect to the plaintiff on October 21. The letter also purported to inform plaintiff of his right to appeal this determination within nine days of the date it was mailed.

Plaintiff and members of his household speak only Spanish. Accordingly he took this letter to a friend for translation. The friend completely mistranslated the letter, leaving plaintiff uninformed of its true content. Plaintiff personally visited the unemployment office on November 3, 1977, to investigate the delay in receiving benefits and at that time first learned of the ineligibility finding from an agency interpreter. He filed an appeal that same day. The Department of Labor's referee ruled on appeal that he lacked jurisdiction to review the adjudicator's determination because plaintiff had filed his appeal late. This ruling was timely appealed, but the decision was affirmed by the Board of Review of the Department of Labor (the Board). A timely complaint was filed in the circuit court of Cook County, which was dismissed on the Board's motion. Another timely appeal was taken to the appellate court. The appellate court reversed the circuit court and remanded the cause for a determination on the merits. 79 Ill. App. 3d 635.

We granted the Board and Lab-Line Instruments, Inc. (Lab-Line), plaintiff's former employer, leave to appeal and consolidated the cases. We also granted the United Automobile, Aerospace and Agricultural Implement Workers of America leave to file an *amicus curiae* brief in support of the plaintiff. We reverse the appellate court.

The facts on which this appeal is to be judged are found in plaintiff's complaint and the testimony of the plaintiff during the proceedings before the referee. Lab-Line filed an answer to plaintiff's complaint which largely consisted of averments that it was "without knowledge sufficient to form a belief as to the truth of the allegations" in the complaint. The Board apparently did not file an answer to plaintiff's complaint or a record of the proceedings on review in the circuit court, but did move to dismiss the complaint. The parties also filed memoranda of law. The proceedings before the referee were made part of the record in the appellate court on motion of the Board.

This record shows that plaintiff filed his claim for benefits personally on September 21, 1977, and was assisted by a Spanish-speaking interpreter employed by the Department of Labor. Plaintiff at this time provided information contained on a standard agency benefit claim form. This form apparently was examined by the referee, but was not submitted on the record. No testimony regarding representations or advice provided plaintiff by the agency on September 21 appears on the record. The adjudicator thereafter ruled plaintiff ineligible and mailed the notice to that effect on October 21. No evidence was presented as to when it was received. The notice, which is not contained in the record, apparently stated that an appeal of the determination had to be taken within nine days of October 21. The referee stated on appeal that the plaintiff would have been allowed to appeal as

late as October 31, because October 30 was a Sunday, making October 31 the first weekday after the nine-day appeal period had run.

The plaintiff testified at the hearing before the referee, through an interpreter, that immediately upon receiving the notice, he took it to a friend for translation. The friend only informed him that the letter said he was discharged for unauthorized absences, something he knew already. The plaintiff said he trusted the translation because his friend was attending school and knew more English than he did. Plaintiff had never attended school. When he did not receive certification forms, which must be filled out to receive benefits, he visited the unemployment office again on November 3, 12 days after the notice was mailed, and was informed in Spanish that he was ruled ineligible. He was advised of his appeal rights and filed one that same day.

Initially we note that no issue has been raised regarding information employers are required to provide to terminated employees (see, e.g., Dep't of Labor Reg. 14(a) (eff. Sept. 22, 1977)), section 703 of the Unemployment Insurance Act (Ill. Rev. Stat. 1977, ch. 48, par. 453), concepts of waiver or estoppel, the custom or practice of the agency, or the clarity of the notice itself. We therefore assume for purposes of this case that such issues are irrelevant.

The Illinois Constitution in relevant part states that "Circuit courts shall have such power to review administrative action as provided by law." (Ill. Const. 1970, art. VI, sec. 9.) The Administrative Review Act, which is applicable (see Ill. Rev. Stat. 1977, ch. 48, par. 520; Ill. Rev. Stat. 1977, ch. 110, par. 265), states in pertinent part:

> "If under the terms of the Act governing the procedure before an administrative agency an administrative decision has become final because of the failure to file any docu-

ment in the nature of objections, protests, petition for hearing or application for administrative review within the time allowed by such Act, such decision shall not be subject to judicial review hereunder excepting only for the purpose of questioning the jurisdiction of the administrative agency over the person or subject matter." Ill. Rev. Stat. 1977, ch. 110, par. 265.

Plaintiff's appeal from the determination of ineligibility was governed by section 800 of the Unemployment Insurance Act, which, at that time, stated:

"Except as hereinafter provided, appeals from a claims adjudicator shall be taken to a Referee. *** Unless the claimant or any other party entitled to notice of the claims adjudicator's 'finding' or 'determination,' as the case may be, or the Director, within seven days after the delivery of the claims adjudicator's notification of such 'finding' or 'determination,' or within nine days after such notification was mailed to his last known address, files an appeal therefrom, such 'finding' or 'determination' shall be final as to all parties given notice thereof." (Ill. Rev. Stat. 1977, ch. 48, par. 470.)

See also Dep't of Labor Reg. 23 (eff. May 14, 1977).

The nine-day limitation contained in section 800 is analogous to a statute of limitations provision for those parties "given notice thereof." (See *Zimmerman Brush Co. v. Fair Employment Practices Com.* (1980), 82 Ill. 2d 99; *Springfield-Sangamon County Regional Plan Com. v. Fair Employment Practices Com.* (1978), 71 Ill. 2d 61, and cases therein cited.) It is a mandatory rather than a directory provision because the consequence of noncompliance, that the claims adjudicator's determination be considered final, is clearly provided in the Act. (See *Zimmerman Brush Co. v. Fair Employment Practices Com.* (1980), 82 Ill. 2d 99, 106, citing *Tuthill v. Rendelman* (1944), 387 Ill. 321, 350, which in turn cited *Clark v. Quick* (1941), 377 Ill. 424, 430.) It is undisputed here that plaintiff was "given notice" by the agency, and he apparently received it in sufficient time to permit com-

pliance with its terms. The argument advanced here, however, is that plaintiff did not have "actual notice" of the contents of the notice because he spoke only Spanish and his friend incorrectly translated the contents of the notice.

In this regard, we find the reasoning of the Supreme Judicial Court of Massachusetts persuasive. In *DaLomba v. Director of the Division of Employment Security* (1975), 369 Mass. 92, 337 N.E.2d 687, plaintiff, a Portugese immigrant not versed in English, applied for unemployment compensation with the assistance of an interpreter. A notice of the denial of her claim and of her appeal rights was mailed and received by plaintiff, who took the notice to a neighbor for translation. The neighbor mistranslated the notice, causing her to fail to file an appeal within seven days of the time the notice was mailed, the appeal period provided by statute. The plaintiff, several days beyond the applicable period for appeals, became concerned about the delay in receiving benefits, went to a service organization for help, discovered the true content of the notice, and immediately filed an appeal. The court held that notices written in English were "reasonable and are sufficient to constitute effective notice" (369 Mass. 92, 96, 337 N.E.2d 687, 689), and pointed out that a decision in the plaintiff's favor "might lead to a claim that a notice in English is insufficient as to illiterates and all non-English speaking persons" (369 Mass. 92, 96, 337 N.E.2d 687, 690). Since the notice was adequate, the untimely appeal therefrom was considered barred, the court relying on cases which parallel our own in requiring compliance with procedural rules. (*Cf. People v. Stueve* (1977), 66 Ill. 2d 174, 178; *Hamilton Corp. v. Alexander* (1972), 53 Ill. 2d 175, 178; *People v. Nordstrom* (1967), 37 Ill. 2d 270, 273.) As the *DaLomba* court stated: "[L]ate filing is fatal." 369 Mass. 92, 96, 337 N.E.2d 687, 690.

No persuasive distinction of *DaLomba* has been offered, and that court's reasoning is equally persuasive here. There, as here, the statute required the notice to be "given" to benefit applicants ruled ineligible. (Mass. Ann. Laws, ch. 151A, sec. 39 (Law. Co-op 1976).) There, as here, the applicant spoke no English, took the notice to a friend for translation and received an inaccurate report of its contents.

Although the parties have not raised the issue, we note that, in 1976, the Massachusetts legislature amended the statute to allow the agency to hear a case filed late if it was untimely filed for good cause. (Mass. Ann. Laws, ch. 151A, sec. 39 (Law. Co-op 1980 Supp.).) It is by no means certain, however, that one who receives an erroneous notice translation would be allowed to file late under this provision.

Similarly without substance is the claim that the due process clauses contained in the Illinois (Ill. Const. 1970, art. I, sec. 2) and United States (U.S. Const., amend. XIV) constitutions require us to allow plaintiff's appeal of the ineligibility determination. Such claims have been thoroughly considered and rejected under principles we need not belabor here. (See *Commonwealth v. Olivo* (1975), 369 Mass. 62, 337 N.E.2d 905; *Guerrero v. Carleson* (1973), 9 Cal. 3d 808, 512 P.2d 833, 109 Cal. Rptr. 201, *cert. denied* (1974), 414 U.S. 1137, 38 L. Ed. 2d 762, 94 S. Ct. 883.) No persuasive distinction of those cases has been offered.

Our statute does not provide for late filings for excusable neglect or for good cause, although we note that the time for filing has been extended recently to 30 days (Pub. Act 81—1477 (approved Sept. 15, 1980)) and that notices are now routinely sent in Spanish to those, like this plaintiff, who have been identified as Spanish-speaking. (See Benefit Section Bulletin No. 1434 (Nov. 26, 1979).) These changes operate prospectively, however

(see *Zimmerman Brush Co. v. Fair Employment Practices Com.* (1980), 82 Ill. 2d 99, 108-09), and we are unwilling ourselves to further amend the statute by engrafting onto it a good-cause or excusable-neglect provision, which would allow the appeal period to be extended in this case, on grounds that a benefit applicant cannot understand the English language.

Plaintiff argues that the appellate court decision did not require bilingual notices, but merely allowed this plaintiff to appeal the adverse determination of the claims adjudicator. Employers and employees each have an interest in the prompt consideration of benefit claims; each side may, depending on the circumstances, desire to have the merits of such a claim considered before the facts go stale. Employers are certainly interested in learning quickly the extent of their financial responsibility, while recently terminated employees are interested in promptly ascertaining the amount of benefits they will receive, if any. Thus, if the agency desired to remain faithful to these purposes, it would have to provide bilingual notices were we to affirm the appellate court.

The nine-day appeal period represented a legislative compromise between conflicting forces of policy: the desire to further the beneficent purposes of the Act and the desire to further those purposes quickly and ensure that those receiving benefits actually need them. Exceptions to this requirement, if any are to be fashioned, must be symmetrically applied and, therefore, carefully formulated so as to ensure that the beneficent purposes of the Act are not ultimately defeated. And, as stated once in dissent, in words that have not lost their vitality:

> "Rules of procedure are a necessary part of an orderly system of justice. Their efficacy, however, depends upon the willingness of the courts to enforce them according to their terms. Changes in rules whose inflexibility has turned out to work

hardship should be effected by the process of amendment, not by *ad hoc* relaxations by this Court in particular cases. Such dispensations in the long run actually produce mischievous results, undermining the certainty of the rules and causing confusion among the lower courts and the bar." (*Thompson v. Immigration & Naturalization Service* (1964), 375 U.S. 384, 390, 11 L. Ed. 2d 404, 408, 84 S. Ct. 397, 400 (Clark, J., dissenting).)

See also Davis, *Foreword* to K. Davis, Discretionary Justice at v (1976).

Accordingly, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.