ZOILA ALFONSO, APPELLANT, v. BOARD OF REVIEW,
DEPARTMENT OF LABOR AND INDUSTRY, STATE OF
NEW JERSEY, RESPONDENT.

Argued October 19, 1981—Decided April 26, 1982.

*Jose E. Pardo, II,* argued the cause for appellant (*Patricia A. Thornton,* Executive Director, Essex-Newark Legal Services, attorney).

*Michael S. Bokar,* Deputy Attorney General, argued the cause for respondent (*James R. Zazzali,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

On September 7, 1979 appellant, Zoila Alfonso (Alfonso), filed a claim for unemployment insurance benefits with the South Newark Claims Office of the Division of Employment Security, Department of Labor and Industry (Division). On September 25, 1979, while at the South Newark office, she was personally served with a "Notice of Determination," which stated that her claim was being denied because she had left work voluntarily. The notice, written entirely in English, also informed her that she had seven days in which to file an appeal of the determination. Alfonso neither reads nor speaks English.

For reasons not explained in the record, Alfonso did not have the document translated until October 5, 1977, ten days after she

had received it.[1] On that day, with the aid of the local community group that had translated the notice, she filed with the Division an appeal of the determination. On October 17, 1979, the Division's appeal tribunal entered an order dismissing the appeal because it had not been filed within the seven day period required by *N.J.S.A.* 43:21–6(b)(1). This order was subsequently affirmed by the Division's Board of Review (Board).

In her appeal of that affirmance before the Appellate Division, Alfonso argued that both the due process clause of the Fourteenth Amendment and Section 601 of the Civil Rights Act of 1964, 42 *U.S.C.* § 2000d, require that the notice of determination, including the notice of time in which to appeal, be given to claimants in a language that they can understand—in this case Spanish. The Appellate Division rejected these arguments and affirmed the decision of the Board. *Alfonso v. Board of Review, Department of Labor and Industry,* 176 *N.J.Super.* 492 (1980). The matter is now before us for review because of the substantial constitutional question involved. *R.* 2:2–1.

■ Appellant's principal argument addresses the nature and extent of notice that is required under traditional notions of due process. In an oft-quoted passage, the United States Supreme

---

[1] On the basis of certain documents in its file the Board disputes this assertion. A Record of Claim Interview form shows that the September 25 determination was preceded that day by a claim interview. Alfonso's comments, as summarized by the examiner, appear on the form. Immediately following Alfonso's signature on the front of the form are the words "Interpreter: Donna Perez." After the interview Alfonso received a Notice of Determination form, indicating that she was disqualified for benefits. At the bottom of the form immediately preceding notice of the time to appeal are the words "Right of Appeal," circled in pen, apparently by the examiner.

The Board asks us to assume from this information that an interpreter assisted Alfonso at the claim interview and explained the time limitations to her. Although that conclusion is not unreasonable, it is not the exclusive one, particularly in view of the Board's concession that no one can testify that an interpretation was in fact furnished. In any event we need not decide the point given our determination on the constitutional issue.

Court has articulated the fundamental nature of the notice requirements:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. * * * But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. "The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals." [*Mullane v. Central Hanover Bank & Trust Co.*, 339 *U.S.* 306, 314–15, 70 *S.Ct.* 652, 657–58, 94 *L.Ed.* 865, 873–74 (1950) (citations omitted).]

These general principles form the proper analytical basis for our inquiry. The paramount question thus is whether the notice given to the claimant here was calculated "under all the circumstances" to convey the required information. The answer depends on an appraisal of the circumstances.

Appellant argues not that the notice was unclear *per se*, but rather that it was unclear to her solely because she is not literate in English. She alleges, and the Board does not dispute, that the agents of the Division who handed her the determination knew that she did not speak or read English. Under such circumstances, she maintains, the State was required by the due process considerations outlined by *Mullane, supra,* and echoed in the New Jersey cases, *O'Connor v. Abraham Altus,* 67 *N.J.* 106, 126 (1975); *Feuchtbaum v. Constantini,* 59 *N.J.* 167, 175 (1971), either to translate the notice for her or to give her a written translation. Logically extended, this argument leads to a requirement that when the State is obliged to give notice, it must provide such notice in a language comprehensible to the recipient, at least where the State is aware that the recipient is not fluent in English.

The highest courts in at least three states have rejected this argument. In two of those instances the courts were faced with situations nearly identical to those in this case.

In *DaLomba v. Director of the Division of Employment Sec.,* 369 *Mass.* 92, 337 *N.E.2d* 687 (Mass.1975), the Supreme Judicial Court of Massachusetts held that an unemployment claimant's

right to procedural due process was not violated when she was sent a notice written entirely in English, even though she was not fluent in English. The court said:

> We do not believe that a notice in English, clear on its face, is insufficient under the statute merely because, as to persons under a language disability, it may not actually inform. English is the official language of this country and of this Commonwealth. Official communications in the English language are reasonable and are sufficient to constitute effective notice. [*Id.* at 94, 337 *N.E.2d* at 689, (footnote and citations omitted).]

Because the notice in English was adequate, the court upheld the denial of the request for review that was not filed within the statutory time limit.

The same result was reached, under similar circumstances, in *Hernandez v. Department of Labor*, 83 *Ill.2d* 512, 48 *Ill.Dec.* 232, 416 *N.E.2d* 263 (Ill.1981). The case involved the denial of unemployment benefits. The Supreme Court of Illinois rejected the argument that due process required that an out-of-time appeal be allowed where the reason for the tardiness was the claimant's inability to comprehend a notice written entirely in English. Likewise, the Supreme Court of California has held that the State was not required to issue welfare reduction notices in Spanish to those who the State knew were literate in Spanish but not in English. *Guerrero v. Carleson*, 9 *Cal.3d* 808, 109 *Cal.Rptr.* 201, 512 *P.2d* 833, *cert.* den., 414 *U.S.* 1137, 94 *S.Ct.*  883, 38 *L.Ed.2d* 762 (1974), relying in part on *Castro v. State*, 2 *Cal.3d* 223, 85 *Cal.Rptr.* 20, 466 *P.2d* 244 (1970), wherein the court, emphasizing the substantial state interest in maintaining a single language system made it clear that there was no constitutional requirement that California adopt a bilingual electoral apparatus. See also *Kuri v. Edelman*, 491 *F.2d* 684 (7th Cir. 1974); *Nuez v. Diaz*, 101 *Misc.2d* 399, 421 *N.Y.S.2d* 770 (Sup.Ct.1979). The theory that unites all of these holdings is not complex. The courts have recognized, whether explicitly or implicitly, that in an English-speaking country, requirements of "reasonable notice" are satisfied when the notice is given in English.

These holdings are not born of any lack of appreciation for the difficulties that non-English speaking people encounter in our society. Those difficulties are many and burdensome. It is doubtless true, especially in areas where there is a high density of non-English speaking population, that administrative and humanitarian considerations would warrant the use of bilingual documents. The Board readily acknowledges as much. Indeed, as we were informed at oral argument, the Division has developed a Spanish language explanatory sheet for the Notice of Determination, for use in the cases of claimants who speak and understand Spanish and are deficient in English language skills.[2] But these salutary considerations by no means translate into a requirement, under procedural due process concepts, that the State adopt a policy mandating the use of such documents. The decision to provide translation, encompassing as it does the determination of when a translation should be provided, and to whom, and in what language, is one that is best left to those branches of government that can better assess the changing needs and demands of both the non-English speaking population and the government agencies that provide the translation.

Under the circumstances the notice given to the appellant satisfied the requirements of due process. In so holding, we number ourselves among those other courts, cited above, that have expressed the view that although bilingual or multilingual notices may in some instances be desirable, their use is not constitutionally required.

■ In addition to the due process argument, Alfonso also alleges that the Division's failure to provide bilingual notice violates the Civil Rights Act of 1964, 42 *U.S.C.* § 2000d. The contention is without merit.

Affirmed.

---

[2]Although the bi-lingual form has been distributed since 1978, there is no evidence in the record that it was in fact used in Alfonso's case and the Board concedes it could not produce such evidence even were there to be a remand.

WILENTZ, C. J., dissenting.

On September 25, 1979, Zoila Alfonso was handed a Notice of Determination, a printed form, entirely in English. She does not understand English. The staff of the South Newark claims office apparently knew that she spoke only Spanish. Zoila Alfonso was required to respond to this notice by filing an appeal within seven days, the same amount of time available to English-speaking applicants. There is no reason to presume that she understood that this printed piece of paper required her to take action, let alone immediate action. There is also no reason to presume that had she known immediate action was required she would have been able to comply, that reliable translation facilities were within her reach, and if they were, that she would have been able to arrange a visit within the time required. There is nothing to suggest that Zoila Alfonso ever had an opportunity to appeal the adverse determination of her unemployment benefits claim.[1]

---

[1]The majority, while holding that no translation is required, states that the conclusion that one was in fact supplied (despite Ms. Alfonso's assertion to the contrary) is "not unreasonable..." 89 *N.J.* 41, 43 n.1. It thereby adds insult to injury. The record properly before us permits only one conclusion: no translation was supplied. The material that the State seeks most untimely to add to that record does not at all affect that conclusion, even were we to consider it. Since some of that material was submitted at oral argument, and some (without motion) but five days before, plaintiff had no meaningful opportunity to address or rebut it, a circumstance that should preclude a court from reaching any conclusion on the matter. The material sought to be added to the record consists of "newly-discovered" records suggesting that an interpreter employed by the State was present during some portion of the claim interview, but the State has no proof whatsoever that the interpreter translated the *determination*, or even that the interpreter was present at the critical moment when the determination was delivered to plaintiff. The State further claimed at oral argument, for the first time in more than two years of litigation, that it was the *general* practice at the South Newark claims office to supply Spanish-speaking claimants with a form of determination translated into Spanish, but it has no proof whatsoever that this was done in Alfonso's case. The State knew, at least by the time the case was argued in the Appellate Division in 1980, that the lack of a translation was the central issue in this case. It was not until oral argument before us

When the State knows that a person does not understand English, it has an obligation to provide notice in that person's language with a sufficient amount of information to trigger inquiry or action that will result in an appeal, unless the burden of providing that notice is so great that it outweighs the benefits of doing so. *Guerrero v. Carleson*, 9 *Cal.*3d 808, 109 *Cal.Rptr.* 201, 512 *P.*2d 833, 841 (1973) (Tobriner, J., dissenting), *cert.* den., 414 *U.S.* 1137, 94 *S.Ct.* 883, 38 *L.Ed.*2d 762 (1974). The burden is on the State to show that it would be unreasonable to require notice in the claimant's language in cases where simple notice of the right to appeal and time limit for action is all that is needed.

This result is clearly mandated by the due process guarantees of the Fourteenth Amendment of the United States Constitution. The majority cites *Mullane v. Central Hanover Bank & Trust Co.*, 339 *U.S.* 306, 70 *S.Ct.* 652, 94 *L.Ed.* 865 (1950), to reach a contrary result. But in fact, *Mullane* provides the strongest support for the conclusion that Zoila Alfonso was not

---

that it produced this material, explaining that a "final search" uncovered the documents related to the case, although earlier searches had been fruitless. It does not say whether it attempted to interview the interpreter, its own employee, when it first learned of the claim of lack of translation, or if indeed it ever attempted to interview her. After two years, and after effectively conceding the fact throughout the proceedings, including its brief before this Court, it now attempts to challenge plaintiff's story. Its proof is inherently weak; it concedes that it cannot present independent testimony of what happened at plaintiff's claims interview to overcome plaintiff's statement of the case. That statement required no corroboration then (since it was never challenged) nor would the majority—if it faced the issue—require any now, at a time when the State's totally unjustified delay in challenging the statement may have made corroboration impossible.

The majority notes that its reference to this material is unnecessary in view of its holding. The intended effect, presumably, is to convey the impression, by suggesting plaintiff was indeed supplied with a translation at the time the determination was delivered, that the result here is just, even apart from constitutional issues. As noted above, we suggest that the majority can justify neither its result nor the adverse reflection on plaintiff's truthfulness by using this additional material.

given notice of her right to appeal. In the passage quoted by the majority, the Court in *Mullane* included these words:

> The notice must be of such nature as reasonably to convey the required information ... and it must afford a reasonable time for those interested to make their appearance. [339 *U.S.* at 314, 70 *S.Ct.* at 657, 94 *L.Ed.* at 873 (citations omitted).]

The Court went on to say:

> [W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. [339 *U.S.* at 315, 70 *S.Ct.* at 658, 94 *L.Ed.* at 874.]

*Mullane* established a constitutional balancing test that requires us in determining whether due process was satisfied to weigh the burden on the state of giving notice that actually "convey[s] the required information" against the benefits to the individual receiving notice (and all others who will subsequently be benefitted by the state's efforts) in order to determine the state's duty in a given case.

> Against [the] interest of the State we must balance the individual interest sought to be protected by the Fourteenth Amendment. This is defined by our holding that "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, [783] 58 L.Ed. 1363, 1368. This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest. [339 *U.S.* at 314, 70 *S.Ct.* at 657, 94 *L.Ed.* at 873.]

The state must prove that reasonable efforts have been made to give notice; the reasonableness of those efforts is measured in the *Mullane* balance.

The burden on the state to provide foreign language notice of appeal is composed of a number of factors. The state must determine what language the claimant speaks. This may involve training its personnel to elicit this information from applicants for benefits. It must acquire a translation of the salient material—usually very little—into the claimant's language, and communicate this translated information to the

applicant.[2]  These requirements amount to dollar expenditures and a degree of continuing vigilance on the part of state personnel to ensure that applicants are properly notified of their right to appeal adverse claims.

The benefits to be derived from foreign language notice must be measured not only by the value to the individual whose claim is at issue, but also to others whose interests will be protected in the future.  For the individual claimant, benefits include a real (as opposed to theoretical) opportunity to appeal, so that the applicant may acquire review of his or her claim without undue barriers not faced by an English-speaking claimant.  If the claimant proves successful, she will receive the monetary benefits to which she is entitled.  In addition to its cash value, this grant represents the claimant's right to enjoy the same benefits to which her years of work entitle her, as do all other claimants who qualify for this insurance.

Moreover, notice in the claimant's language relieves her of the difficult task of determining in a vacuum whether a notice is official and, if so, how quickly official notices must be translated.  It is no small burden to acquire an accurate translation.[3] Claimants may have to travel some distance to an agency that assists non-English speaking persons to assure them of adequate assistance.  This in itself is difficult when one does not speak

---

[2]There are a number of ways in which this burden may be met, some of which do not require more than the translation of a few lines.  *See infra*, n.6 at 52.

[3]The danger of relying on family or friends for a translation was clearly shown in *Hernandez v. Department of Labor*, 83 *Ill.*2d 512, 48 *Ill.Dec.* 232, 416 *N.E.*2d 263 (Ill.1981), and *DaLomba v. Director of Division of Employment Security*, 369 *Mass.* 92, 337 *N.E.*2d 687 (1975), on which the majority relies. In each of those cases, claimants received notice of their denial of unemployment insurance benefits and promptly sought translations from friends.  Unfortunately, the friends supplied inaccurate or incomplete translations.  The courts nonetheless held that claimants had been given adequate notice.  Thus, acquisition of an accurate translation may require a visit to an official agency to assure accuracy.

the language of a host country, and with less and less public and private money available to fund such foreign language assistance programs, they are becoming fewer and farther between.

If the claimant is handed the determination notice by a staff member at the claims determination office, this will be some indication that the notice is official, and requires a translation. It does not, however, indicate the need for an especially speedy translation. Moreover, if a staff member makes a good faith attempt to communicate the substance of the determination to the claimant, and does not or cannot explain the right of appeal and the time limit for action, the claimant may leave the office believing she possesses all the critical information contained in the notice. She may thus abandon any effort to pursue a claim that resulted in an adverse determination. Alternatively, if the notice is mailed, the claimant must consider how important the printed message may be in order to decide how quickly to seek a translation.[4] It is not unreasonable to assume that a non-English speaking person needing translation assistance collects several pieces over a number of days before traveling to a service agency for help, thereby risking missing a deadline by a few days.

After the value of translation to the individual claimant is considered the balancing test must be completed by determining whether other persons will benefit by the effort expended by the state on that claimant's behalf. Once a translation is acquired and personnel trained to use it, the burden or cost of providing foreign language notice to others who follow is greatly reduced while the benefit is increased for each person who is "actually inform[ed]." *Mullane v. Central Hanover Bank & Trust Co., supra,* 339 *U.S.* at 315, 70 *S.Ct.* at 658, 94 *L.Ed.* at 874.

---

[4]It is unrealistic to expect an individual to run to an assistance agency each time an "official-looking" notice arrives in the mail. There are too many mailed advertisements that are printed in an official-looking manner in order to encourage recipients to open them. Furthermore, the envelope and the contents may not appear official to a non-English speaking person, even though it would to others.

Applying this test to the present case, it is clear that English notice to Zoïla Alfonso was "a mere gesture [and] not due process," and that she was denied notice of her right to appeal the adverse ruling of her benefits claim. *Mullane, supra,* 339 *U.S.* at 315, 70 *S.Ct.* at 658. The burden on the Department of Labor and Industry does not seem great. The State must pay for translations to be made and determine in what manner this translated information will be communicated to the claimant. It need not embark on a long and costly process to translate all the forms it uses in the benefits claims process.[5] It could simply attach a notice in Spanish that stated that the accompanying letter contained the decision in the person's benefits claim and required the applicant to act within seven days after its delivery but no later than ten days after its mailing if he wanted to appeal; and that failure to act within that time would result in a loss of the right to appeal the decision. *N.J.S.A.* 43:21–6(b)(1).[6] This would clearly tell the claimant that prompt action

---

[5]Note, however, that the State previously acquired translations of some of its forms concerning unemployment compensation. *See* letter from Mr. James Ware, then Assistant Commissioner of the New Jersey Department of Labor and Industry, to Ms. JoAnne Gibson, then Assistant Deputy Public Advocate, dated June 4, 1976, and attachments.

[6]*See, e.g., Consolidated Edison of N. Y., Inc. v. Powell,* 77 *Misc.*2d 475, 354 *N.Y.S.*2d 311, 316 (Civ.Ct.N.Y.1974). There, the court reviewed a utility's proposed order for discontinuance of utility services and found it failed to comply with due process requirements. The court set forth the conditions to be met for the notice to comply and devised its own forms. Although it does not appear to have been requested by the parties and the rest of the notice was in English, the court headed the form with this warning:

NOTICE! YOUR GAS OR ELECTRICITY MAY BE CUT OFF! IF YOU WISH A HEARING YOU MUST GO TO THE CLERK'S OFFICE OF THE CIVIL COURT AT (fill in address), PROMPTLY!

AVISO! SU GAS O ELECTRICIDAD PUEDEN SER CORTADOS! SI USTED DESEA UNA AUDIENCIA USTED DEBE IR A LAS OFICINAS DEL SECRETARIO DE LA CORTE CIVIL EN (fill in address), INMEDIATAMENTE!

Another option available to the State is to provide staff members with a card on which the appeal notice is translated into several commonly used languages from which the staff could read aloud, or could point to the

was required without burdening the State with the responsibility of translating numerous forms.[7]

proper translation. I suggest that any one of these methods could be used to meet the due process mandate without requiring the State to choose any one in particular.

[7]State agencies in fact provide numerous publications for the assistance of Spanish-speaking residents. The fact that so many forms have been translated suggests that the burden of simply advising a claimant of the right of appeal and the time allowed is minimal.

The following are examples of such forms:

From the Department of Labor & Industry, Division of Unemployment and Disability Insurance:

Seguro por Desempleo e Incapacidad en New Jersey (Unemployment Insurance in New Jersey) PR–94S (R–5–81) (pamphlet).

Instrucciones para Solicitar Beneficios del Seguro por Desempleo (Spanish Language Instructions for Applicant Preparation of a Claim for Unemployment Benefits (BC 4A/B)) BC–407S (4–78) (one page).

Aviso Importante para Reclamantes de Beneficios Extendidos (EB) (Important Notice for Claiming Extended Benefits) EB–7–S (3–81) (one page).

Reglas Importantes para Solicitar Beneficios (Important Rules in Applying for Benefits) BC–336S (R–10–78) (one page).

Instrucciones para Llenar una Reclamación Continua para Beneficios por Desempleo (Spanish Language Instructions for the Completion of a Continued Claim for Unemployment Benefits) BC–41GS (9–78) (one page).

Instrucciones para Radicar una Reclamación Adicional por Beneficios de Desempleo (Spanish-language Instructions for Applicant Preparation of an Additional Claim for Unemployment Benefits (BC–4)) BC–408S (4–78) (one page).

Notificación de la Determinación (Spanish-language Explanatory Sheet for the Notice of Determination (BC–26B)-copy for claimant) BC–409S (5–78) (one page).

Reclama por Correo para Beneficios de Desempleo al Volver a Trabajar (BD–260) (Spanish-language explanatory sheet for a R.T.W. mail claim form for Unemployment Insurance Benefits (BC–260)) BC–410S (7–78) (one page).

Notificación del Procedimiento para Investigar su Reclamación por Beneficios (Spanish-language version of "Claimant's Appointment for Fact-Finding Proceeding" (BC–91)) BC–412S (9–78) (one page).

Cuestionario para Reclamantes de Beneficios Extendidos (Questionnaire for Claiming Extended Benefits) EB–8–S (4–81) (one page).

Solicitud de Número de Registración para Extranjeros (Request for Alien Registration Number) DS–83 (R–8–80) (one page).

Note 7—Continued

El Programa de Seguro por Incapacidad Temporera de New Jersey (The Temporary Disability Program in New Jersey) PR–117S (R–12–79) (pamphlet).

Instrucciones para Solicitar Beneficios del Seguro por Incapacidad-Plan Estatal (DS–1) (Instructions for Filing a Proof and Claim for Disability Benefits-State Plan (DS–1)) BC–411S (9–78) (one page).

Preguntas para Analizar su Elegibilidad (Spanish Language Eligibility Review Questionnaire) BC–413S (8–79) (one page).

Descalificación por Abandono Voluntario (Disqualification for Voluntary Abandonment) BC–33S (R–6–80) (one page).

Seguro por Incapacidad Temporera (Temporary Disability Insurance) DS–82 (R–9–80) (post card).

Aviso Importante (Important Notice) BC–415S (10–78) (attachment slip).

From the Department of Labor & Industry, Division of Workplace Standards (Office of Wage and Hour Compliance):

La Ley de Horas y Salarios de Nueva Jersey (New Jersey State Wage and Hour Law) MW–138 (R–1–81) (one page).

Aviso a Trabajadores Agrícolas (Notice to Farm Workers) (one page).

Leyes del Estado de Nueva Jersey, 1965 Capitulo No. 173 (Laws of the State of New Jersey, 1965 Chapter 173) MW 82S (R–4–76) (one page).

Leyes del Estado de Nueva Jersey, 1966 Capitulo No. 113 (Laws of the State of New Jersey, 1966 Chapter 113) (MW–167 (R–1–81) (one page).

Trabajadores Agrícolas (Farm Workers) MW–117 (R–1–81) (one page).

Ley de Registro para Encargado de Trabajadores de Nueva Jersey, P.L. 1975, c. 49 Enmendado [amended] y [and] suplementando [supplemented] P.L. 1971, c. 192, efectivo 7 de Abril de 1975 (Crew Leader Registration Act) (22 pages).

Department of Labor & Industry, Division of Employment Services:

Noticia-Información Adicional Sobre Empleos (Notice-Additional Employment Information) NJES:JS 030703 (R–4–78) (one page).

Department of Labor & Industry, Division of Workers Compensation:

Lo Que Cada Trabajador Debe Saber Acerca de los Beneficios de Compensación al Trabajador en New Jersey (What Every Worker Should Know about Workers Compensation Benefits in New Jersey) WC–338S (R–10–80) (pamphlet).

Department of Labor & Industry, Division of Vocational Rehabilitation:

¿Incapacitado? La Rehabilitación Vocacional Puede Prestarle Ayuda (Disabled? Vocational Rehabilitation Can Offer You Help) DVR–105S (R–11–80) (pamphlet).

División de Rehabilitación Vocacional de Nueva Jersey (Division of Vocational Rehabilitation in New Jersey) DVR–860S (R–10–81) (pamphlet).

¿Presiones Debido a las Condiciones de Trabajo? (Pressure due to Work Conditions?) DVR–858S (R–9–81).

Department of Civil Service:

Note 7—Continued

Usted ha Pasado su Examen del Servicio Civil. ¿Qué Sucede Ahora? (You have Passed your Civil Service Test. What Happens Next?) May 1977 (pamphlet).

Department of the Public Advocate:

La Voz Pública de los Ciudadanos de Nueva Jersey. (The Voice of the Citizens of New Jersey) (pamphlet).

Department of Law and Public Safety, Division of Motor Vehicles:

Manual del Conductor (Driver's Manual) (pamphlet).

Department of Insurance:

Esta es la Ley Que "No Culpa" en Nueva Jersey (No Fault Insurance Law in New Jersey) (pamphlet).

Pare para Comprar su Seguro de Automóviles (Stop Before you Buy Automobile Insurance) 1977 (pamphlet).

Department of Transportation:

¿Es su Compañía una Empresa de Negocios Propiedad de Minoría? (Is your Company a Minority Business Enterprise?) 12–80 (pamphlet).

New Jersey State Council on the Arts:

Guia para Becas 1981–82 (Grants Guidelines 1981–82) (pamphlet).

Department of Human Services, Division of Medical Assistance and Health Services:

Paga Inmunizar a tu Hijo un Mensaja de Medicade (It Pays to Immunize your Child—A Message from Medicaid) (pamphlet).

Medicade— ¿Que Es? ¿Quienes son Elegibles? ¿Como se Usan los Beneficios? (Medicaid—What is it? Who is Eligible? How are the Benefits Used? March 1979 (pamphlet).

Department of Human Services, Division of Public Welfare:

Cupones de Alimentos Hacen la Diferencia en Nueva Jersey (Food Stamps Make the Difference in New Jersey) FSP–920S Rev. 2/80 (pamphlet).

Audiencias Imparciales en el Programa de Cupones para Alimentos (Fair Hearings in the Food Stamp Program) FSP–196S (3/80) (pamphlet).

Como Solicitar para S.S.I. (How to Apply for S.S.I.) GA–191 (12/80) (pamphlet).

Subsidio de Energía para el Hogar (Energy Subsidy for the Home) EP–17S (11/80) (pamphlet).

Servicios en los Programas de Mantenimiento para Niños y Paternidad (Children and Maternity Substenance Program) CSP–140S (6/80) (pamphlet).

Sus Derechos y Responsabilidades en el Programa de AFDC (Your Rights and Responsibilities in the AFDC Program) PA–197S (6/80) (pamphlet).

Hora de Trabajo—Mejor Tiempo para Familias de AFDC (Opportunity to Work—Better Times for AFDC Families) PA–198S (4/77) (pamphlet).

El Programa de Asistencia General en Nueva Jersey (The New Jersey General Assistance Program) (pamphlet).

Balanced against this requirement are the benefits to be realized in this case. A Spanish-language notice would have given Zoila Alfonso the opportunity to appeal her denial of unemployment insurance benefits. She was functionally denied the right of appeal available to English-speaking claimants, and, assuming she was otherwise qualified for them, denied the cash benefits of unemployment insurance because she did not get a translation quickly enough. A Spanish-language notice of the right to appeal would rectify both these penalties.

The benefits are multiplied when it is considered how many applicants may need Spanish-language notice. Persons of Hispanic origin make up a sizeable portion of New Jersey's population.[8] The unemployment claims division may thus be able to assist a good many applicants if it is equipped with Spanish translations of the more important claims provisions.[9]

Moreover, there are special considerations of fairness to be accorded Spanish-speaking persons. Spanish, unlike any other language, has quasi-official status in the United States because of our relationship to the Commonwealth of Puerto Rico. Puerto Ricans are United States citizens with the same responsibilities and benefits of other United States citizens, but schools in

---

Note 7—Continued

Sus Derechos y Responsabilidades en el Programa de Asistencia General (Your Rights and Responsibilities in the General Assistance Program) GA–197S (6/80) (pamphlet).

Audiencias Imparciales en el Programa de Asistencia General (Fair Hearings in the General Assistance Program) GA–196 (6/81) (pamphlet).

[8]In 1980, the population of persons of Hispanic origin in New Jersey was 491,867, while the total population of the State was 7,364,158. Hispanic persons thus accounted for 6.68 percent of New Jersey's population. *See* U. S. Dep't of Commerce, Bureau of the Census, *1980 Census of Population and Housing, Final Population and Housing Counts* (1981).

[9]The number of unemployed persons of Hispanic origin is disproportionately greater than that of the populace at large. In 1977, 17.2 percent of all Hispanics in the labor force in New Jersey were unemployed; the unemployment rate for all persons in the labor force in New Jersey was 9.4 percent. N.J. Dep't of Labor & Industry, *Manpower Information for Affirmative Action Programs,* Table 2 at 5 (1977).

Puerto Rico are conducted in Spanish. Thus, unlike non-English speaking immigrants from foreign countries, non-English speaking Puerto Ricans are not required to learn English before they may exercise their right to vote as United States citizens.[10] Spanish is thereby given special recognition as the native language of many United States citizens. While the majority may be correct that the United States may be characterized as "an English speaking country," *see* 89 *N.J.* at 51, neither the United States nor the State of New Jersey has established English as its official language.[11] And when, implicitly and

---

[10]*See* 8 *U.S.C.* § 1402; 8 *U.S.C.* § 1423; 42 *U.S.C.* § 1973b(e); and *see generally* discussion in *Puerto Rican Organization for Political Action v. Kusper*, 490 *F.*2d 575, 578 (7th Cir. 1973).

Citizenship is not a prerequisite for eligibility for Unemployment Compensation benefits. *N.J.S.A.* 43:21–4(h)(i)(1).

[11]The State has never adopted an official language. While New Jersey laws give broad recognition to English as the language of predominant use, increasing recognition and use of Spanish is in evidence.

In New Jersey, newspapers qualified as legal newspapers must be printed and published in English within the state at least once a week and continuously for at least one year, *N.J.S.A.* 35:1–2, and State, county, municipality and other official notices must be published in an English language newspaper. *N.J.S.A.* 35:1–2.1 and 35:1–2.2. Public records must be in English to be entitled to recording and filing, *N.J.S.A.* 47:1–2, and laws and documents must be printed in English. *N.J.S.A.* 52:36–4.

The State requires the primary ballots and samples of the general election and primary ballots to be printed in English and Spanish in election districts in which the primary language of 10 percent or more of the registered voters is Spanish. *N.J.S.A.* 19:14–21, 19:23–22.4, 19:49–4. Moreover, "in any county in which there is at least one election district in which bilingual sample ballots must be provided ..." bilingual voter registration forms must be prepared. *N.J.S.A.* 19:31–6.4(c).

New Jersey has established bilingual education programs, *N.J.S.A.* 18A:35–15 *et seq.*, and makes available evening instruction of foreign-born residents in the English language. *N.J.S.A.* 18A:49–1 *et seq.*

*Cf.* Ill.Rev.Stat. Ch. 1, § 3005: "The official language of the State of Illinois is English." Even so, the court in *Puerto Rican Org'n for Political Action v. Kusper*, said "This statute ... has never been used to prevent publication of official materials in other languages." 490 *F.*2d 575, 577 (7th Cir. 1973).

explicitly, Spanish has achieved some measure of official recognition, the Spanish-speaking population may reasonably expect that information of great importance to their well-being will be conveyed to them in a manner that communicates the essential information required.[12]

I would hold here, then, that for Spanish-speaking persons in New Jersey, the benefits of providing Spanish language notice

---

The United States requires a person to have "an understanding of the English language" in order to be naturalized as a citizen of the United States. 8 *U.S.C.* § 1423. But the requirement is waived for persons "physically unable to comply therewith," or persons more than 50 years old who have lived in the United States for more than a total of 20 years. *Id.* Moreover, "understanding" encompasses only an "ability to read [and] write simple words and phrases . . . ." *Id.*

In legislation establishing programs for bilingual education, the Congress created a program to provide "instruction designed to enable [children of limited English proficiency], while using their native language, to achieve competence in the English language." 20 *U.S.C.* § 3222.

[12]Some agencies already require Spanish language translations. *See, e.g., N.J.A.C.* 10:81–2.15 and 10:81–7.1 relating to Public Assistance benefits:

18:81–2.15 Notice and information to client

(a) If immediate need is not apparent and a decision of approval or disapproval is not reached within 30 days of application, the CWB shall notify the applicant in writing of this fact and the reason for the delay. If the lack of decision is due to circumstances within the control and knowledge of the applicant, the welfare board will remind the applicant of the steps he/she must take to enable the welfare board to make a decision. (This notice shall include a sentence in Spanish cautioning the client that it related to his/her eligibility for public assistance and if he/she does not understand the notice he/she should contact the CWB.)

18:81–7.1 Notice to client or [*sic*] county welfare agency decision

(c) All notification of agency decisions shall state in clear, simple language the nature of the decision, the effective date of the decision and the accurate factual and legal basis for the decision. In adverse decisions, it shall include at least citation and title of all applicable regulations (see subsection (k)1 of this section). Additionally, notices shall include an explanation of the client's right to a conference, right to a fair hearing, and the circumstances under which assistance is continued if a fair hearing is requested. This notice shall include a sentence in Spanish cautioning the client that it relates to a change in his/her grant and if he/she does not understand the notice, he/she should contact the CWA. (See appendix C for Form PA–15).

outweigh the burdens as a matter of law. As to persons speaking other languages, the balancing test of a proper due process analysis would have to be applied when that case arose.

I would think, however, that due process requires notice in other well-known languages as well. Thus, when the State knows that a claimant speaks only Polish, Hungarian, Italian, Chinese, Portuguese, or another relatively common language, it should be required to give notice of appeal in that language.

I am aware that many generations of non-English speaking persons managed to survive in this country without such assistance. But the fact that they struggled is insufficient reason to require others to be penalized as well. Due process is an elastic concept, one that takes new form as our standards of fairness and compassion change with a changing society. Just as it would now be unthinkable for a judge to allow a *pro se* litigant to leave the courtroom without understanding his right to appeal and the time limit for action, so should it be incredible

---

*N.J.A.C.* 10:85–7.2 re General Assistance benefits:

10:85–7.2  Notices to applicants/recipients

(c) Notices of denial, reduction or termination and time-limited notices shall state in clear, simple language the nature of the action, the effective date and the reason such action is being taken.  (See notice forms in Appendix A.)

1. Basis for action: In addition, all notices of adverse action (denials, reductions and terminations) shall contain the citation upon which each action is based.

2. Right to appeal: The notice shall include an explanation of the client's right to request, within ten days, a local hearing and his/her further right to a State fair hearing if a local hearing is not convened within 15 days of the date of the hearing request.

3. Statement in Spanish: Each notice shall include a statement in Spanish cautioning the individual that the information contained therein related to his/her eligibility for assistance and, if he/she does not understand it, he/she should contact the MWD.

*N.J.A.C.* 10:89–5.2 re Home Energy Assistance benefits:

10:89–5.2  Notice requirements

(a) All notices will include a statement regarding the right to appeal any decision regarding eligibility or amount of benefit and will be available in both English and Spanish.

that an unemployment benefits claimant should be allowed to leave the claims office without being helped to understand these rights.

I do not intend to imply any translation requirements for other English-language notices, *e.g.*, legal notices in newspapers, notices of rule-making proceedings, or the innumerable other notices required by statute or constitutional mandate. All I address here is the right of a claimant or litigant to receive notice of information central to his or her claim or action.[13]

Due process requires notice. When it is not given to English-speaking people, they can set aside the proceedings, even though, by some extra effort, they might have been able to obtain timely notice themselves. Notice is the birthright of all people in this country, not just those who are vigilant enough to make daily inquiry about the status of proceedings, or to seek independent explanation of otherwise incomprehensible forms. When the State knows the claimant or litigant does not understand English, the State has the obligation to provide notice that can be understood. The constitutional guarantees of non-English speaking persons cannot be left to the protection of hoped-for humanitarian acts. These guarantees are theirs by right, not by charity.

There are undoubtedly better, and preferable, means than litigation to achieve notice to non-English speaking people. Agencies could voluntarily provide it, the Legislature could

---

[13]When non-English speaking people are represented by counsel, an adversary or court may assume that communication to counsel is sufficient notice, where notice to the party is not otherwise required. In this connection I applaud the distribution by the New Jersey State Bar Association of a brochure listing the names of lawyers with proficiency in any of 27 foreign languages. 109 *N.J.L.J.* supplement (Feb. 4, 1982). Obviously such information can be vital to potential clients and their friends. I have no doubt that the fact of such proficiency can be appropriately included in advertisements by lawyers. *Cf. N.J. Advisory Comm. on Professional Ethics No. 461*, 106 *N.J.L.J.* 221 (Sept. 11, 1980), refusing, in accordance with its policy, to pass on the propriety of a lawyer's advertisement indicating fluency in Spanish.

require it, or perhaps private agencies could facilitate it. Many things can be achieved without the aid of the courts. This State, as a result of increasing compassion and understanding, as well as, perhaps, the increasing political strength of Hispanic-Americans, is moving in the direction of providing such information in Spanish. That the practice will all some day be remedied, however, and by a process preferable to court order, is no answer to the claim of denial of constitutional right. The tradition of constitutional deprivation in these matters does not lend legitimacy to the practice. Today prisoners are freed by courts if their conditions of confinement amount to cruel and unusual punishment; those involuntarily confined to mental institutions are entitled to periodic hearings and minimal treatment. If our courts are capable of correcting such long-lasting substantive deprivations at enormous cost to the State there is no reason why the gross unfairness of the procedure used here cannot be corrected by courts responding to the clearest constitutional command: the notice that is the bedrock of due process. It poses no danger to our patriotism or our unity, or to the certainty that we will remain an English-speaking nation. It shows only that we are strong enough to give meaning to fundamental rights when they are possessed by non-English speaking people in our midst, and that we are confident enough about the future to admit that perhaps we may have been wrong in the past.

Some might think that the rule of the majority provides an incentive to learn English. No such incentive is needed, for every day of their lives provides Hispanic-Americans with innumerable, often devastating reminders of their disadvantaged position resulting from the language barrier they face. There is no carrot in this decision, only a stick.

I find that Zoila Alfonso should have been given notice of her right to appeal and the time limit for filing her appeal, and she was not. She was thereby denied due process of law by the State.

I therefore would reverse and remand the matter to the Division's Appeal Tribunal for a hearing on the merits.

Justice PASHMAN joins in this opinion.

*For affirmance*—Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—5.

*For reversal and remandment*—Chief Justice WILENTZ and Justice PASHMAN—2.