74 A.3d 1004

GENARO ALICEA, APPELLANT, v. BOARD OF REVIEW, DEPARTMENT OF LABOR, AND JOTTAN, INC., RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 6, 2013—Decided August 28, 2013.

Before Judges GRALL, SIMONELLI and KOBLITZ.

*Zachary R. Wall* argued the cause for appellant (*Alan H. Schorr & Associates, P.C.*, attorneys; *Mr. Wall,* on the brief).

*Ellen A. Reichart,* Deputy Attorney General, argued the cause for respondent Board of Review, Department of Labor (*Jeffrey S. Chiesa,* Attorney General, attorney; *Lewis A. Scheindlin,* Assistant Attorney General, of counsel; *Ms. Reichart,* on the brief).

Respondent Jottan, Inc. has not filed a brief.

The opinion of the Court was delivered by

KOBLITZ, J.A.D.

To comply with the due process requirement that a determination of unemployment overpayment must be sent in Spanish to Puerto Rican seasonal workers, a translation of the substantive determination as well as a translation of the appeal timeline must be provided. Appellant Genaro Alicea appeals from the final decision of respondent Board of Review (Board), which affirmed for the second time [1] the decision of the Appeal Tribunal dismissing Alicea's appeal based on untimely filing and failure to show good cause for the late filing.[2] On appeal, Alicea argues that the Board's failure to allow him to present the merits of his appeal denied him due process. We agree and reverse.

Alicea, who speaks only Spanish, worked as a roofer for Jottan, Inc. in New Jersey. On November 5, 2009, the Division of Unemployment Insurance mailed him four determinations assessing $17,802.50 in purportedly fraudulently obtained unemployment compensation and penalties dating from 2004 through 2008. The determinations were addressed to his home address, a post office box on a rural route in Bayamon, Puerto Rico. They were written in English. Only one paragraph in the middle of each determination titled "Appeal Procedure" was translated into Spanish. Ali-

---

[1] The Board successfully sought a remand to permit Alicea to demonstrate good cause for the late filing, but after a second hearing again dismissed the appeal.

[2] The appeal of a determination that a person has illegally received unemployment benefits and must refund the benefits must be filed within seven calendar days after delivery or within ten calendar days after the mailing of the determination, for any determination made on or before December 1, 2010. *N.J.S.A.* 43:21–16(d)(1). Late filing can be excused only upon a showing of good cause, which is defined as circumstances that are either beyond the control of the appellant or "circumstances which could not have been reasonably foreseen or prevented." *N.J.A.C.* 12:20–4.1(h).

cea testified that he thought the entire determination was in English and did not see the paragraph written in Spanish, which explained the deadline for filing an appeal. An additional sentence was added to the Spanish version stating, "Si no habla Inglés por favor pida que le traduzcan este formulario inmediatamente." In English this sentence means, "If you do not speak English, please ask someone to translate this form immediately."

Alicea filed his appeal in a letter dated December 9, 2009, thirty-four days after the four determinations were mailed to him. At his initial telephonic hearing, Alicea denied receiving any unemployment benefits for the years 2004, 2005 and 2006. He was asked, "after you received the determination how long did you wait until you wrote the letter on December 9?" and responded, "I think it was a period of about two months. I was looking for the money to be able to travel to complain but I couldn't find the money." After the hearing officer corrected him, stating that only one month had gone by between the mailing of the determinations and his appeal, Alicea agreed that it was one month. At the second hearing, Alicea testified "when I get my mail I receive [it] at a mailbox. Sometimes I get it later and that's what happened with the situation." At first he testified that he sent the appeal a week after he received the determinations, but then said that he came to New Jersey a week after he received them and then three or four days later he sent in an appeal. He sought the assistance of two people. His appeal was prepared by one person after he had the determinations translated by another person.

We agree with Alicea that the procedures utilized here violated his due process rights as delineated in *Rivera v. Board of Review*, 127 *N.J.* 578, 606 *A.2d* 1087 (1992). *Rivera* concerned a similar situation involving a migrant farm worker who lived in Puerto Rico. Our Supreme Court said:

> Nor are English-only notices sent to migrant farm workers in Puerto Rico reasonably calculated to provide those persons with a[n] adequate notice. *Cf. Alfonso v. Board of Review*, [89 *N.J.* 41, 45, 444 *A.2d* 1075], *cert. denied*, 459 *U.S.* 806, 103 *S.Ct.* 30, 74 *L.Ed.2d* 45 (1982) ("in an English-speaking country, requirements of 'reasonable notice' are satisfied when the notice is given in English"). As

we have stated above, the nature of the notice required by the due-process clause depends on the actual context in which notice is being given. Puerto Ricans carry out most of their daily life and public business in the Spanish language. *See Id.* [at 57, 444 A.2d 1075] (Wilentz, C.J., dissenting) ("Spanish is ... given special recognition as the native language of many United States citizens."). Because migrant farm work is among the lowest wage and status work in the society, it is generally those who have limited education in either Spanish or English whose fate it is to do this work. Since 1986 the Legislature has recognized that the failure to translate notices to persons who "apply for or receive unemployment benefits" into Spanish puts those persons at a severe disadvantage. *N.J.S.A.* 43:21–11.1(b) (Farmworkers Bilingual Rights Amendment). The Farmworkers Bilingual Rights Amendment provides that the Department of Labor shall make bilingual forms available for all Spanish-speaking agricultural workers applying for or receiving benefits. The statute does not expressly mention former recipients. Nonetheless the statute provides that "the actions shall include, but not be limited to," making such forms available to workers applying for or receiving benefits. *N.J.S.A.* 43:21–11.1(b). Whether this legislation applies directly to a person who received benefits in the past, it clearly indicates a State policy that the due process afforded to residents of a U.S. Commonwealth where Spanish is the predominant language should include bilingual notification. *See Vasquez v. Glassboro Ass'n,* [83 *N.J.* 86, 99, 415 A.2d 1156] (1980) ("The courts and Legislature of New Jersey have demonstrated a progressive attitude in providing legal protection for migrant farm workers.").

[*Id.* at 588–89, 606 A.2d 1087 (fourth alteration in original).]

Alicea is a roofer rather than a farmworker, but both occupations are composed of seasonal workers who are often poorly-educated and poorly-paid. The Court in *Rivera* used a balancing test to determine the cost of the procedural improvements as weighed against the rights of the individual and the State. *Id.* at 589, 606 A.2d 1087 (citing *Mathews v. Eldridge,* 424 *U.S.* 319, 335, 96 *S.Ct.* 893, 903, 47 *L.Ed.*2d 18, 33 (1976)). As the Court stated in *Rivera,*

In this case the interests in avoiding a wrongful order to repay are substantial. Although, unlike welfare, unemployment insurance is not based directly on financial need, such payments are almost invariably relied on to meet basic needs. *See Ross v. Horn,* [598 F.2d 1312, 1318–19 (3d Cir.1979), *cert. denied* 448 *U.S.* 906, 100 *S.Ct.* 3048, 65 L.Ed.2d 1136 (1980) ] (" 'the potential deprivation here is generally likely to be less that in [*Goldberg v. Kelly,* 397 *U.S.* 254, 90 *S.Ct.* 1011, 25 L.Ed.2d 287 (1970) ] (welfare), although the degree of difference can be overstated' ") (quoting *Mathews v. Eldridge,* 424 *U.S.* at 341, 96 *S.Ct.* at 906, 47 L.Ed.2d at 37). Given the nature of migrant temporary labor, there is little doubt that Rivera has spent these funds and repaying them would constitute a serious hardship. On the other hand, little explains the inflexible application of the ten-day time limit on appeals. The Department has four years within which to recoup payments that were wrongly

made. Moreover, the general need to expedite eligibility decisions does not apply to recoupment. The cost of the hearing on the merits that the Department denied to Rivera is reimbursed by the federal government. 26 *U.S.C.* § 3301–09. And as the procedural history of this case illustrates, claimants who file late appeals receive hearings but are then not allowed to raise substantive issues. No fewer administrative resources would have been expended had the Department allowed Rivera an appeal on the merits.
[*Id.* at 589–90, 606 *A.*2d 1087.]

Alicea was accorded two hearings. Neither hearing addressed the merits of his appeal. Unlike Rivera, Alicea's determinations contained one paragraph in Spanish delineating the time-frame to appeal and encouraging him to have the remainder of the determination translated. The Board points to no case that stands for the proposition that encouraging an individual in Spanish to have the remainder of an English form translated into Spanish constitutes sufficient notice of the form's content to a Spanish-speaking recipient. Rather, the Board relies on *Alfonso, supra,* for the holding that a determination written in English is sufficient. After the holding in *Rivera,* that proposition does not apply to an individual who speaks only Spanish, lives in Puerto Rico and has seasonal employment in New Jersey.

We have repeatedly acknowledged the important role that proper translation into the language of the litigant plays in our legal system.[3] *See State v. Marquez,* 202 *N.J.* 485, 514, 998 *A.*2d 421 (2010) (reversing the defendant's refusal to submit to a breath test conviction because the standard statement read by the police, which explained the consequences of his refusal, was only read in English, a language the defendant did not speak or understand); *Daoud v. Mohammad,* 402 *N.J.Super.* 57, 61, 952 *A.*2d 1091 (App.Div.2008) (noting that " '[i]nterpreters should be provided whenever a failure of communication may have significant negative

[3] The "Standards for Delivering Interpreting Services in the New Jersey Judiciary" provide that "[a]ll people, including persons with limited proficiency in English, should have equal access to court proceedings, programs and services." Standard 1.1 to the Administrative Office of the Courts, Directive # 3–04 (Mar. 22, 2004), *available at* http://www.judiciary.state.nj.us/directive/personnel/dir_03_04.pdf.

repercussions.'" (quoting Standard 1.2 of the Administrative Office of the Courts, Directive # 3–04 (Mar. 22, 2004), *available at* http://www.judiciary.state.nj.us/directive/ personnel/dir_03_04.pdf)); *State v. Rodriguez*, 294 *N.J.Super.* 129, 138–39, 682 *A*.2d 764 (Law Div.1996) (stating that an interpreter can be "potentially indispensable to the discharge of justice"). *See also Flores v. Bd. of Review*, 74 *Ill.App.*3d 667, 669–71, 30 *Ill.Dec.* 602, 393 *N.E.*2d 638 (1st Dist.1979) (finding that a non-English speaker could file an appeal for unemployment compensation beyond the statutory time limitation as she did not receive actual notice of the referee's decision because the determination was written in English and not properly translated by a friend).

Here, the practice of only translating information about the timeline for filing an appeal, without translating the underlying substantive decision, is contrary to a requirement of fairness.[4] As we said in a slightly different context involving unemployment benefits, "we view an analysis under fairness principles to coincide with a procedural due process analysis, since at its core, due process calls for those procedural protections that fairness demands." *Garzon v. Bd. of Review*, 370 *N.J.Super.* 1, 9, 850 *A*.2d 524 (App.Div.2004).

A fundamental underpinning of fairness in any appellate system is the communication of the actual decision made. How can a litigant decide whether to file an appeal if he does not know what was decided? It would have been simple enough to translate the determinations entirely into Spanish. Each determination may have then become two pages rather than one, but what a small price to pay to ensure comprehension by the affected party.

Reversed and remanded for a hearing on the merits. We do not retain jurisdiction.

---

[4] Part of the form written only in English states "Your matter may be referred to the Division of Criminal Justice for prosecution." This is certainly an important warning, which implicates criminal penalties and should be communicated effectively to the recipient.