253 N.J. Super. 653 (1991)
602 A.2d 803
5000 PARK ASSOCIATES, PLAINTIFF,
v.
RAMON COLLADO, DEFENDANT.
Superior Court of New Jersey, Law Division (Civil), Hudson County.
Decided October 8, 1991.
*654 Alan Zark, for plaintiff.
Ramon Collado, defendant, pro se.
HORNSTEIN, J.S.C.
This is a suit to dispossess a tenant for a violation of the terms of a written lease, pursuant to N.J.S.A. 2A:18-61.1e. Based on the credible, relevant testimony and the documents submitted into evidence, the following findings of fact are made.
Defendant is a tenant in a multi-unit apartment building owned by plaintiff, which is located at 45 51st Street, Weehawken. Defendant resides in apartment # E-4 for which he pays a monthly rental of $208.93.
"Apartment Rental Rules and Regulations" were submitted to defendant on or about May 30, 1990. They were signed as accepted by defendant, dated June 25, 1990. The applicable part of the rules and regulations read as follows:

*655 B. CONDUCT OF TENANT AND USE OF PREMISES
For Tenant's own safety, as well as the safety and well-being of others, Tenant hereby agrees that Tenant, Tenant's family, guests and invitees shall not: ...
....
9. Keep any mammal, reptile or bird in the apartment unless it is, in each instance, expressly permitted in writing by Landlord. Such permission given to any tenant shall not be considered as permission to do so for any other tenant. Tenant must leash any animal when walking it. Tenant must clean up after the animal when walking it in areas surrounding the premises or adjacent properties.
Sometime in early March 1991, it was learned by plaintiff that defendant kept a pet dog in his apartment. A notice to cease  "to remove the dog from your apartment immediately."  was served on defendant on or about March 25, 1991. The dog was not removed.
A notice to quit was served on defendant on or about April 16, 1991. This notice terminated defendant's tenancy as of May 31, 1991. The June rent was tendered by defendant but not accepted by plaintiff. Defendant is illiterate in the English language. The rules and regulations were read to him by a friend.
The rules and regulations consist of 7 1/2 single spaced typewritten pages on 8 1/2" X 11". The rules are subdivided into separate parts  A through E. Each part except D contains various numbered provisions. For example, part B, has 22 individual "shall not[s]."
Defendant lives alone. His dog is his only companion. The dog is a small chihuahua approximately 12 inches in length. Defendant has had the dog since about June 1985. He wants to keep the dog; it is his only "entertainment."

Conclusion.
The notice to cease and the notice to quit are inadequate; they do not meet the requirements of "suitable notice." As quoted in 447 Associates v. Miranda, 115 N.J. 522, 559 A.2d 1362 (1989) and A.P. Development Corp. v. Band, 113 N.J. 485, 550 A.2d 1220 (1988), the statement of the Assembly, attached *656 to the anti-eviction act (N.J.S.A. 2A:18-61.1 et seq.) reads as follows:
At present, there are no limitations imposed by statute upon the reasons a landlord may utilize to evict a tenant. As a result, residential tenants frequently have been unfairly and arbitrarily ousted from housing quarters in which they have been comfortable and where they have not caused any problems. This is a serious matter, particularly now that there is a critical shortage of rental housing space in New Jersey. This act shall limit the eviction of tenants by landlords to reasonable grounds and provide that suitable notice shall be given to tenants when an action for eviction is instituted by the landlord [115 N.J. at 527, 559 A.2d 1362 and 113 N.J. at 492, 550 A.2d 1220]
"Suitable notice" to the tenant of the eviction is mandatory, Ibid. "Suitable" is defined:
a: adapted to a use or purpose
b: satisfying propriety: PROPER
c: ABLE, QUALIFIED [Webster's Ninth New Collegiate Dictionary, (1985) at 1180.]
To be "suitable", the notice must be such that it would be understandable by the tenant.
The tenant in our case is of Hispanic origin. He does not understand the English language. He cannot read or write English. At all court proceedings at which he was present, a Spanish-English interpreter was provided for him.
The official report of the United States Bureau of the Census, for 1990, of which judicial notice is taken, Evid.R. 9(1), indicates for New Jersey:

 total population 7,730,188
 Hispanic origin
 (of any race) 739,861
 percent of total
 population 9.6

For Hudson County, the report states:

 total population 553,099
 Hispanic origin
 (of any race) 183,465
 percent of total
 population 33.2

Guidance may be had from some statutory and regulatory requirements. New Jersey election law provisions mandate *657 that ballots and sample ballots be printed bilingually in each election district "in which the primary language of 10% or more of the registered voters is Spanish." N.J.S.A. 19:14-21, -25; N.J.S.A. 19:23-22.4; N.J.S.A. 19:49-4.
District boards of election in districts "in which the primary language of 10% or more of the registered voters is Spanish" must have two additional members, of Hispanic origin "and fluent in Spanish." N.J.S.A. 19:6-1.
Under the federal Voting Rights Act of 1965, 42 U.S.C.A. § 1973 et seq., ballots, instructions, forms and letters may not be only in the English language if more than five percent of citizens of voting age of a particular political subdivision are "members of a single language minority" and the illiteracy rate for that subdivision is higher than the national illiteracy rate. Illiteracy means failure to complete the fifth primary grade, 42 U.S.C.A. § 1973aa-1a.
"Language minority" or "`language minority group' means persons who are ... of Spanish heritage." Id. at ¶ (e).
Judicial notice is taken of the New Jersey Administrative Code, N.J.S.A. 52:14B-5(e). Under N.J.A.C. 5:11-7.2(c), a notice in Spanish to Spanish speaking tenants is required in an eviction sought under N.J.S.A. 2A:18-61.1 (the anti-eviction act), paragraph g(1) and g(3). In addition to the usual notice to quit, a landlord must serve the tenant with an additional statement as written in the regulations.
The rule concludes: "Spanish speaking tenants shall be provided with this statement in Spanish...."
The Spanish language provision is a requirement of the same anti-eviction act under which plaintiff is now proceeding. If a notice or statement in Spanish is required for one section of the act, should not notices in Spanish, under the same circumstances, be required for evictions under the other sections?
The inescapable conclusion is that Ramon Collado is a member of a language minority group  Hispanic. He lives in an *658 area where over 33% of the population is of Hispanic origin. He is illiterate in English. Defendant should have been provided with bilingual notices, English and Spanish, to cease and to quit.
The rules and regulations given to the tenant to sign should also have been in Spanish as well as in English. As to the dog, defendant has had this pet for almost six years prior to being served with the notice to cease. He had the dog for approximately five years prior to the rules and regulations being sent to him for signing.
Had the tenant known of his rights to contest the pet provision of the rules, he could have done so. The anti-pet provision may very well have been declared unreasonable under the circumstances as to this tenant. Defendant was handicapped by not having the rules and regulations provided to him in Spanish. The landlord has not shown any adverse effect caused by the tenant in keeping the dog. Taking all factors into consideration, defendant should be allowed to keep his pet and to remain as a tenant.
The notice to cease and the notice to quit not being in the Spanish language are not "suitable notices." They are legally insufficient and void.
Complaint dismissed.