870 A.2d 314 (2004)
376 N.J. Super. 264
NEW YORK EAST COAST MANAGEMENT, Plaintiff,
v.
Jose GONZALEZ and Maria DeLeon, Defendants.
Superior Court of New Jersey, Law Division, Hudson County, Special Civil Part.
Decided November 8, 2004.
Steven A. Cochrane, Clifton, for Plaintiff.
Mateo Perez, for Defendants.
Fast, J.S.C., Retired and On Recall.
Defense counsel moved to dismiss this summary action for possession of a residential unit, citing 5000 Park Associates v. Collado, 253 N.J.Super. 653, 602 A.2d 803 (Law Div.1991).[1] That case held that when a notice to quit was given in English to a tenant who was "illiterate in the English language," id. at 655, 602 A.2d at 804, and who had a dog in his apartment, contrary to the rules and regulations of the landlord, the tenant was not subject to eviction because the notices to cease and to quit were not written in Spanish and therefore did not provide "suitable notice", contrary to the requirements of N.J.S.A. 2A:18-61.1 et seq.[2] Likewise, in the instant case, the plaintiff-landlord served defendant tenants with notices to cease and to quit, in English, to tenants who, for purposes of this motion, are assumed to speak, and read, only Spanish. In the *315 instant case, the notices were based on the provisions of N.J.S.A. 2A:18-61.1j.[3]
I find that 5000 Park Associates v. Collado, supra, 253 N.J.Super. 653, 602 A.2d 803 requiring that the Notices to Cease and Quit be in Spanish, is inconsistent with current law. Simply stated, there is no such requirement in New Jersey.[4] To require landlords to determine the degree of a tenant's proficiency in the English language and to provide leases, notices and complaints in a tenant's native language is overly burdensome, impractical and subject to abuse by tenants who may feign illiteracy to avoid eviction.[5]
5000 Park Associates cited N.J.S.A. 52:14B-5(e) and N.J.A.C. 5:11-7.2(c) in which the Legislature required that a Notice in Spanish be given to Spanish-speaking tenants in evictions sought under N.J.S.A. 2A:18-61.1g(1) and g(3). These two grounds[6] for eviction require that tenants be advised of their right to relocation assistance, an extraordinary right which does not exist in the instant case. The Legislature could have extended this requirement to all sections of the Anti Eviction Act, but it has not chosen to do so, even in the thirteen years since 5000 Park Associates. However, the Supreme Court has recently directed that "The clerk shall issue the summons... and, in tenancy actions, shall attach to the summons and complaint for service on each defendant English and Spanish copies of the announcement contained in Appendix XI-S to these rules." R. 6:2-2(a). Therefore, Spanish-speaking tenants are advised  in the Spanish translation of the announcement  that assistance is available. But, like the Legislature, the Supreme Court has not extended the requirement to notices to cease or to quit. More specifically, as argued by plaintiff, there is no requirement, either by rule of court, nor by legislation, requiring that a notice to quit (or notice to cease) be in any foreign language, except for the Administrative Code relating to evictions pursuant to N.J.S.A. 2A:18-61.1g(1) and g(3).
Alfonso v. Board of Review, 89 N.J. 41, 46, 444 A.2d 1075, 1077 (1982) (relating to an unemployment compensation claim) held that:
The decision to provide translation, encompassing as it does the determination of when a translation should be provided, and to whom, and in what language, is one that is best left to those branches of government that can better assess the changing needs and demands of both the non-English speaking population and the government agencies that provide the translation.
Under the circumstances the notice given to the appellant satisfied the requirements of due process. In so holding, we number ourselves among those other courts, cited above, that have expressed the view that although bilingual or multilingual notices may in some instances be desirable, their use is not constitutionally required.
*316 The dissent, in Alfonso, appeared to have emphasized the limitation that the burden of giving certain notices to litigants in their native language is only on the State:
When the State knows that a person does not understand English, it has an obligation to provide notice in that person's language with a sufficient amount of information to trigger inquiry or action that will result in an appeal, unless the burden of providing that notice is so great that it outweighs the benefits of doing so.
Id. at 48, 444 A.2d at 1078.
So much of the law is a matter of line-drawing, sometimes in regard to time limitations  here, in the matter of forms and legal documents. That appears to have been on Judge Hornstein's mind, also, in 5000 Park. His rationale would have extended the Administrative Code requirement (supra, relating to relocation expenses) to all grounds for eviction under the Anti-Eviction Act:
"The Spanish language provision is a requirement of the same antieviction act under which plaintiff is now proceeding. If a notice or statement in Spanish is required for one section of the act, should not notices in Spanish, under the same circumstances, be required for evictions under the other sections?"
5000 Park, 253 N.J.Super. at 657, 602 A.2d at 805 (emphasis added.) But his question begs the issue in this case  where else (except in relocation cases and in his decision) is there any requirement that any substantive notice be in Spanish under any other section of the Anti-Eviction Act?[7] In dictum, Judge Hornstein drew an even longer line: "The rules and regulations given to the tenant to sign should also have been in Spanish as well as in English." Id. at 658, 602 A.2d at 805.
Another problem, suggested by Alfonso, Supra, 89 N.J. at 50, 444 A.2d at 1080, is the requirement that is sought to be imposed on the landlord: "It is no small burden to acquire an accurate translation." The footnote to that statement includes the observation that: "Thus, acquisition of an accurate translation may require a visit to an official agency to assure accuracy." That observation related to proceedings before a State agency and procedural aspects (the time period within which the petitioner would have had to file an appeal). The problem to an individual private landlord (whose rights and obligations must be considered, as well as those of a tenant), without the resources available to the State, is greatly compounded when a notice to quit must contain specific, particularized, allegations of substantive facts. Defendant would impose that burden on a landlord who is illiterate in a foreign language, but nevertheless cannot discriminate against a person who is of a foreign ancestry or nationality.[8] I find no legal requirement therefor.[9]
*317 A landlord may serve a notice to cease and a notice to quit in any foreign language customarily used by a tenant, notwithstanding the finding in this opinion that there is no legal requirement therefor. Likewise, a landlord may provide receipts, a lease, rules and regulations and a complaint for eviction in a foreign language customarily used by a tenant. The only relevant and formally mandated requirement is that the summons for a summary dispossession action must be in the form at Appendix XI-B in the Rules of Court and that it be served with the notice required by R. 6:2-2(a).
Other issues related to line drawing come readily to mind: 5000 Park Associates related to an eviction pursuant to N.J.S.A. 2A:18-61.1 and held that a notice to quit must be in Spanish when the tenant is illiterate in English. Would that concept be as applicable to the eviction of a tenant pursuant to N.J.S.A. 2A:18-53 (which would include small commercial rentals)? And, would a defendant, illiterate in the English language, be able to have a complaint dismissed because the complaint is in English?
I find that the line cannot be drawn by me; the plaintiff has complied with the current requirements of law and should not be punished for having done so. Therefore, the motion is denied, and the case will be scheduled to proceed on the merits
NOTES
[1] There was another issue presented in the motion, which I have decided in favor of the plaintiff (based on the argument in that brief). I have not discussed that issue in this opinion because this is an interlocutory opinion and the other issue is so remote from the issue discussed herein.
[2] 5000 Park cited A.P. Development v. Band, 113 N.J. 485, 550 A.2d 1220 (1988) with reference to the sufficiency of notices (specifically, in that case, several notices to cease) to a tenant. A.P. Development, at page 505, 550 A.2d at page 1231 said that "... landlords must give clear notice ..." and at page 499, 550 A.2d at page 1228 said that "... the landlord could not evict the tenant before giving them clear and reasonable notice that the terms of their agreement and its statutory rights would be strictly enforced." 5000 Park also cited 447 Associates v. Miranda, 115 N.J. 522, 559 A.2d 1362 (1989), with reference to its having quoted the Assembly's statement upon the introduction of N.J.S.A. 2A:18-61.1 et seq., and the quote within that statement that a landlord must provide "suitable notice" to a tenant as a prerequisite to eviction, according to the requirements of the Anti-Eviction Act. 447 Associates did not, at all, discuss the sufficiency of the notice given. (That case discussed the reasonableness of proposed lease changes.) The language issue was not involved in either case.
[3] N.J.S.A. 2A:18-61.1j permits the eviction of a tenant when the landlord has served the tenant with appropriate notices to cease and to quit, based on habitually late payments of rent.
[4] The logic of 5000 Park Associates would also suggest that non-English speaking tenants receive leases and complaints in their native language, but there is no such requirement in New Jersey.
[5] If a tenant is bilingual, the language issue would be irrelevant, although the issue may still be raised. But, because of the decision in this case, I find it superfluous to discuss who would have the burden of proof on this issue.
[6] That is, N.J.S.A. 2A:18-61.1g(1) and g(3), rather than the subject ground.
[7] There are several instances where the Legislature has mandated that certain information be in Spanish, but that observation only emphasizes that where the Legislature has not so mandated, that the exclusion is a rational exclusion, made in the discretion of the Legislature. Expressio unius est exclusio alterius.
[8] See N.J.S.A. 46:3-23, which provides, as material, that: "Any promise, covenant or restriction in a contract, lease, ... or in any other agreement affecting real property, heretofore or hereafter made or entered into, which limits, restrains, prohibits or otherwise provides against the ... lease, rental, use or occupancy of real property to or by any person because of ... national origin, ancestry, ... is hereby declared to be void as against public policy, wholly unenforceable, and shall not constitute a defense in any action, suit or proceeding...." See also, N.J.S.A. 10:5-4, which provides, as material, that: "All persons shall have the opportunity to obtain ... other real property without discrimination because of ... national origin, ancestry, ... subject only to conditions and limitations applicable alike to all persons. This opportunity is recognized as and declared to be a civil right." The civil right of a foreign speaking person applies to all nationalities, all languages and dialects. How then is a landlord to cope with the various forms and notices for "exotic" languages, without state assistance?
[9] Different Legislatures, both federal and state, have made various provisions relating to substantive bilingual notices. Which languages, and in which situations, I submit, is a matter for the Legislature. In addition, Executive Order 13166 (available on the internet at www.usdoj.gov/crt/cor/13166.htm.) has promulgated certain requirements for federally assisted and federally conducted programs and activities. The private plaintiff here is not involved with either.